PHILIP AND GERALDINE COLEMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1486-86.      Filed February 26, 1990.

*Michael H. King* and *Lawrence H. Jacobson,* for the petitioners.

*John P. Jankowski* and *Donna Hansberry,* for the respondent.

GERBER, *Judge:* We consider here whether respondent timely mailed the notice of deficiency or whether the period has expired for the assessment and collection of any deficiencies in tax for years 1977 through 1981. We

---

previously denied petitioners' motion for partial summary judgment on this issue and ordered that separate proceedings be conducted on the question of the expiration of the period of limitation on assessment prior to a trial on the remaining issues. If we decide that the notice was timely mailed, a separate trial on the issues raised in the notice of deficiency may be necessary. Alternatively, if we find that the notice was not timely mailed and that the limitation period expired, respondent is barred from assessing and collecting on the deficiency relative to tax years 1977 through 1981. However, a trial on that portion of the statutory notice pertinent to 1982 may still be required in either event because the limitation period for that year had not expired.

### FINDINGS OF FACT

The stipulation of facts, supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference.

Petitioners Philip M. and Geraldine B. Coleman, husband and wife, resided at 1099 Pelham Road, Winnetka, Illinois, at the time their petition in this case was filed. The petition was timely filed with this Court on January 16, 1986.

Petitioners jointly filed U.S. Individual Income Tax Returns for tax years 1977 through 1982. Petitioners also filed Applications for Tentative Refund (Form 1045) in regard to their 1980 and 1981 returns. These claims sought refunds for taxable years 1977 through 1979 arising from a carryback of net operating loss deductions generated in the 1980 and 1981 taxable years.

On or about October 26, 1983, petitioners and respondent executed a Form 872 extending through Thursday, October 31, 1985, the period of assessment for the taxable years 1980 and 1981. As a result of the loss carryback deductions, the consent also extended the period of limitation with respect to years 1977, 1978, and 1979. Accordingly, years 1977 through 1981 remained open until October 31, 1985. The period of assessment for petitioners' tax year 1982 would have expired on April 15, 1986.

In a statutory notice dated October 31, 1985, respondent determined the following deficiencies in and additions to petitioners' Federal income tax:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| 1977 | $47,559 | - - - | - - - | - - - |
| 1978 | 186,813 | - - - | - - - | - - - |
| 1979 | 48,646 | - - - | - - - | - - - |
| 1980 | 139,316 | - - - | - - - | - - - |
| 1981 | 72,753 | - - - | - - - | - - - |
| 1982 | 290,757 | $14,538 | * | $29,076 |

*50 percent of the interest due on the underpayment attributable to negligence

The notice was mailed to petitioners in a flat brown envelope. The envelope was mailed from the post office known as the Loop Station as an article of certified mail. On Tuesday, November 5, 1985, a U.S. Postal Service employee unsuccessfully attempted to deliver the envelope to petitioners at their residence in Winnetka, Illinois. Philip Coleman claimed the envelope at the Winnetka Post Office on Wednesday, November 6, 1985. No irregularities appeared on the face of the envelope. Monday, November 4, 1985, was a postal delivery day and was not a legal holiday in the District of Columbia.

Respondent's employees do not mail statutory notices at the Loop Station after 5:30 p.m. Under normal circumstances, certified mail brought to the Loop Station prior to 8:30 p.m. is processed in the same manner as first class mail and is delivered to a post office adjacent to Chicago, such as Winnetka, on the next delivery day. Additionally, an attempt is made to deliver certified mail the day it arrives at the adjacent post office. While delays in overnight postal service occur 2-3 percent of the time, 2-day service is unusual and a delivery delay of 4 days is very rare, especially where there is no indication of misrouting.

The envelope bearing petitioners' notice was assigned certified mail number 786117. The envelope was listed on a Postal Service Form 3877 which included certified mail articles numbered 786105, 786106, and 786108 through 786120. This form was page 2 of three sequential Forms 3877 which were stapled together at the time of delivery to the post office. The first contiguous[1] Form 3877 contained

---

[1] The Forms 3877 preceding and following the one in controversy will be referred to as "contiguous."

certified mail articles 786090 through 786104. The third contiguous form included articles 786121 and 786122. All three forms were torn in the left-hand corner, indicating that they were separated at some point after postal delivery but before trial. The contiguous Forms 3877 were post-marked on October 31, 1985, by the Chicago Loop Post Office. Both forms were also initialed by postal employee Walter Cattledge showing receipt of the listed articles. Neither form contained any indication as to which of respondent's employees prepared these forms.

The Form 3877 at issue was stamp dated October 31, 1985, by respondent's employees. It also contained petition-ers' names, their Winnetka address, a notation of the taxable years covered by the notice, and the total number of pieces of mail listed by respondent on the form. However, the form did not contain either the round Postal Service cancellation stamp or the initials of the Postal Service employee, both of which verify receipt of the items listed on the form. Additionally, there was nothing on the form to indicate which of respondent's employees prepared it.

Affixed to the envelope containing petitioners' deficiency notice was the top half of a Postal Service Form 3849-A indicating that an initial attempted delivery of the envelope occurred on November 5, 1985. The Form 3849-A is used for initial delivery of a certified article to alert the recipient to its arrival. Form 3849-B is used as a delivery reminder and is issued when the article is not called for within 5 days from initial delivery. After issuance of the Form 3849-B, if the article is not called for, generally it is returned after 15 days. The Forms 3849-A and 3849-B are returned to the sender to apprise them of the article's delivery status.

Copies of postal receipt Forms 3849-A and 3849-B from seven items listed on the Form 3877 in issue were available. The Forms 3849-B for article numbers 786106 and 786108 indicate a delivery date of November 1, 1985, for both articles. The Form 3849-A for article number 786110 reflects an original notification date of November 1, 1985, and bears a delivery date of November 4, 1985. The Form 3849-B for article 786114 shows that the article was returned to the sender on November 18, 1985, because it was unclaimed. A copy of Form 3849-A for article number

786116 reflects an original notification date of "1-5-85"[2] and bears a delivery date of November 4, 1985. The Form 3849-A for article 786115 shows only a delivery date of November 6, 1985. The Form 3849-A pertinent to article 786118 does not reflect an original notification date or a date of delivery.

Many of the Forms 3849-A submitted in connection with the first contiguous form indicate either an initial delivery attempt or an actual delivery occurring on November 1, 1985. One Form 3849-B shows that it was forwarded to its addressee on November 4, 1985. A Form 3849-A submitted in connection with the third contiguous form reflects an original notification date of November 2, 1985, and bears a delivery date of November 5, 1985.

Petitioners' notice of deficiency was the result of a field audit of their returns for years 1975 through 1982. The procedures used in respondent's Chicago office for mailing statutory notices in field audit cases were as follows: A field audit case warranting the issuance of a statutory notice was sent to the Exam Division review staff. Any statutory notice to be issued on the case was reviewed and proofread by the statutory notice coordinator, who was responsible for controlling field audit closed cases, reviewing the statutory notice, and insuring the issuance of correct and timely deficiency notices. Once the correctness of the notice was determined, the case was transferred pursuant to a Form 3210 (Document Transmittal) to the Centralized Control Area. From there the case was forwarded to the 90-Day Section of the Centralized Services Branch for the actual mailing of the notice.

To insure timely issuance, the statutory notice coordinator customarily maintained contact with the 90-Day clerk in charge of processing field audit case notices. The coordinator contacted the clerk prior to transmitting the case to inform the clerk as to the number of notices forthcoming. The coordinator also called the clerk subsequent to the mailing of notices to ascertain whether the notices were timely sent. This procedure was regularly employed by the Chicago office statutory notice coordinator.

---

[2]Apparently this date was written in error and should have been stated as 11-5-85.

Michael Gibbons held the position of statutory notice coordinator in the Chicago district at the time petitioners' notice was prepared. Mr. Gibbons identified the statutory notice issued to petitioners as one originating from his section. According to the Form 3210, the case was transmitted to and received by the Centralized Control Area on October 30, 1985. It was received by the 90-Day staff on October 31, 1985. It was Mr. Gibbons' practice to maintain contact with Valerie Barber, who was the 90-Day clerk largely responsible for processing field audit notices. However, he could not recall the number of notices sent from his office on October 31, 1985, and he could not recall talking with Ms. Barber about the specific notice sent to petitioners. At the time of trial, Mr. Gibbons, who was familiar with the Internal Revenue Manual mailing procedures, recognized that the Form 3877 containing petitioners' notice was not stamped or initialed by a postal employee in compliance with those procedures.

Ms. Barber was one of four 90-Day clerks working in the Chicago office on October 31, 1985, and was one of two clerks who dealt primarily with field audit notices. However, Ms. Barber did not have any specific recollection of preparing petitioners' notice or of submitting it with the requisite Form 3877 to the Loop Station postal employee.

The 90-Day processing procedure was as follows: Upon arrival in the 90-Day Section, the case was assigned to a 90-Day clerk by the section supervisor. The clerk was responsible for checking the correctness of the notice and the case file contents and for insuring the timely mailing of the notices. If the notice was correct, it was date stamped and sealed in a pre-addressed envelope by the clerk. For each envelope on hand, the clerk obtained a number from a pretyped list of sequential, 6-digit certified mail numbers kept especially for office audit cases. The clerk placed his or her initials and/or a date stamp next to the numbers used. Another clerk using the list would begin with the number following after the last number so annotated and any subsequent numbers used would be placed on a separate Form 3877. The certified numbers were used in chronological order and were reused once the list was finished.

One of these certified numbers was written on each envelope. The stack of numerically ordered envelopes, along with the Forms 3877, were then given to a secretary who typed the following information onto the form: The certified number, the taxpayer's name, address, and the tax years at issue. Each Form 3877 had room for 15 articles. In those instances where a clerk prepared more than 15 notices for mailing, the secretary went on to use additional Forms 3877.

Thereafter the Form 3877 and the group of notices were proofread by the clerk. If the form was accurate, it was date stamped by the clerk at this time. Where there was more than one Form 3877, the sheets were stapled together and attached to the group of envelopes.

Upon completion, the clerk or the section supervisor hand-delivered the forms and corresponding envelopes to the Loop Post Office which is located on Dearborn Street in downtown Chicago. The forms and numerically ordered envelopes were submitted to the postal clerk at the bulk window. The postal clerk entered the number of envelopes on the bottom of the form, initialed the form, and stamped the form with the round postmark to indicate receipt of this mail. The 90-Day clerk who took the form to the post office was responsible for checking to see that the postal stamp was affixed to the form. He or she was required to return or resubmit the form to the postal clerk if the stamp was missing or was otherwise not obtained. Upon returning from the post office, the 90-Day clerk was required to place the form in a makeshift, three-ring binder. This binder contained, in chronological order, all Forms 3877 used at the Chicago office.

To a large extent, these procedures follow those outlined in the Internal Revenue Manual for the mailing of deficiency notices. However, in this instance, certain details of the Manual's procedure were not followed. The omitted procedures included the requirement that the 90-Day clerk initial and date the Form 3877 in anticipation of being called as a witness to testify to the date on which the letters were mailed.

The same clerk does not always handle the processing of a notice from start to finish and in the course of mailing a

given notice, it may be handled by as many as six different clerks. The annotated lists indicating which clerks used which certified mail numbers on October 31, 1985, were destroyed by respondent in February 1987.

There were reported instances where stapled Forms 3877 were not stamped or initialed by the postal employee, but in those cases the forms were returned to the post office for the required stamp. This is the only known instance where an employee failed to check the Form 3877 for the postal stamp and to return it to the postal clerk before returning the Form 3877 to the IRS office. Respondent's records of statutory notices issued for November 1 through November 5, 1985, show that no notice was mailed to petitioners during this period.

### OPINION

Petitioners maintain that respondent mailed the notice of deficiency after October 31, 1985, and is therefore barred from assessing and collecting taxes for years 1977 through 1981 by reason of the expiration of the limitation period. Respondent contends that the notice was timely mailed from the Loop Post Office on October 31, 1985.

Section 6501(a)[3] provides that income tax shall be assessed within 3 years after the return is filed. Pursuant to section 6503(a), the period of limitation is suspended upon the mailing of a statutory notice. The Secretary is authorized to send a notice of deficiency to the taxpayer by certified or registered mail. Sec. 6212(a).

The expiration of the period of limitation on assessment is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proving its applicability. Rules 39, 142(a). To establish this defense, petitioners must make a prima facie case establishing the filing of their returns, the expiration of the statutory period, and receipt or mailing of the notice after the running of the period. *Robinson v. Commissioner*, 57 T.C. 735, 737 (1972); *Miami Purchasing Service Corp. v. Commissioner*, 76 T.C. 818, 823 (1981). Where the party pleading the defense

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

makes such a showing, the burden of going forward with the evidence shifts to respondent who must then introduce evidence to show that the bar of the statute is not applicable. *Adler v. Commissioner*, 85 T.C. 535, 540 (1985). Where respondent makes such a showing, the burden of going forward then shifts back to the party pleading the affirmative defense to show that the alleged exception to the expiration of the period is invalid or otherwise inapplicable. *Adler v. Commissioner, supra.* The burden of proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations. *Adler v. Commissioner, supra.*

The parties stipulated to petitioners' filing of returns for the years at issue and to the fact that the period within which respondent may assess would have expired on October 31, 1985. Since petitioners have also shown receipt of the notice after this date, their prima facie case is established. Accordingly, respondent must proceed with countervailing proof that the statutory notice was timely mailed.

Respondent bears the burden of proving proper mailing of the notice by competent and persuasive evidence. *August v. Commissioner*, 54 T.C. 1535, 1536-1537 (1970); *Cataldo v. Commissioner*, 60 T.C. 522, 524 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974). This Court requires respondent to introduce evidence showing that the notice of deficiency was properly delivered to the Postal Service for mailing. *Cataldo v. Commissioner, supra* at 524; *Eisenberg v. Commissioner*, T.C. Memo. 1983-767, affd. without published opinion 753 F.2d 1078 (7th Cir. 1985). The act of mailing may be proven by evidence of respondent's mailing practices corroborated by direct testimony or documentary evidence of mailing. *Magazine v. Commissioner*, 89 T.C. 321 (1987); *Cataldo v. Commissioner, supra* at 524; *August v. Commissioner, supra* at 1537-1538; Fed. R. Evid. 406. A Form 3877 reflecting Postal Service receipt represents direct documentary evidence of the date and the fact of mailing. *Magazine v. Commissioner, supra* at 324, 327.

A properly completed Postal Service Form 3877 also reflects compliance with IRS established procedures for mailing deficiency notices. *Keado v. United States*, 853 F.2d

1209, 1212-1213 (5th Cir. 1988). See Internal Revenue Manual, vol. II, pt. IV-Audit, ch. 4400, sec. 4462.2, at 7887 (CCH). Accordingly, where the existence of the notice of deficiency is not disputed, a properly completed Form 3877 by itself is sufficient, absent evidence to the contrary, to establish that the notice was properly mailed to a taxpayer. *United States v. Zolla,* 724 F.2d 808, 810 (9th Cir. 1984), cert. denied 469 U.S. 830 (1984); *United States v. Ahrens,* 530 F.2d 781, 784 (8th Cir. 1976); *Keado v. United States, supra* at 1213; cf. *Pietanza v. Commissioner,* 92 T.C. 729 (1989). More specifically, exact compliance with the Form 3877 mailing procedures raises a presumption of official regularity in favor of respondent. *United States v. Ahrens, supra* at 785-786; *United States v. Zolla, supra* at 810. This presumption may shift the burden of going forward to petitioners. Fed. R. Evid. 301. To prevail, petitioners must rebut the presumption by affirmatively showing that respondent failed to follow his established procedures. *United States v. Ahrens, supra* at 785-786.[4]

A failure to comply precisely with the Form 3877 mailing procedures may not be fatal if the evidence adduced is otherwise sufficient to prove mailing. *Keado v. United States, supra* at 1214.[5] However, where respondent relies on imprecise mailing procedures and other corroborative evidence of mailing, the presumption of official regularity does not apply. In this situation, assuming petitioner has established his prima facie case, respondent is then subject to a burden of production without the presumption. Thus, a defective Form 3877 corroborated by other documentary evidence does not entitle respondent to the presumption of official regularity. Instead, he must come forward with proof of timely mailing and he may rely on this evidence to enable him to meet his burden.

In proving the occurrence of a timely mailing, respondent relied on the presumption of official regularity. *United States v. Ahrens, supra.* The evidence, however, does not entitle him to the presumption. This evidentiary benefit arises where the Form 3877 is properly executed and where

---

[4]See also the discussion on this point in *Pietanza v. Commissioner,* 92 T.C. 729, 742, 747 (1989) (Ruwe, *J.,* dissenting).

[5]See also *Epstein v. Commissioner,* T.C. Memo. 1989-498.

there is strict compliance with its procedures. Respondent's failure to obtain a postal stamp and to otherwise comply with the form's requirements are inexactitudes which do not merit the presumption. However, respondent may prevail if the evidence is otherwise sufficient to enable him to meet his burden of production.

Respondent presented evidence of the mailing procedures followed by the 90-Day and Exam Division review staff. Respondent also submitted a partially deficient Form 3877 and other documentary evidence. If the habit evidence and the Form 3877 are insufficient to carry respondent's burden, he may offer additional evidence to corroborate and show timely mailing. We hold that respondent has met his burden of going forward with the evidence.

Contiguous Forms 3877 submitted by respondent were fully executed in compliance with the established procedures for mailing statutory notices. These forms were signed, initialed, and stamped by postal employee Walter Cattledge. They were also stapled to the Form 3877 in issue. Together they constituted pages 1, 2, and 3 of a group of forms covering article numbers 786090 through 786122, excluding article number 786107 which was apparently not included on the Form 3877 in issue. The fact that contiguous forms 1 and 3 were stamped indicates that, although overlooked by the postal employee, the Form 3877 bearing petitioners' notice was in fact delivered for mailing on October 31, 1985. Additionally, many of the Forms 3849-A and 3849-B associated with the contiguous Forms 3877 show a November 1 attempted or actual delivery date. Based on this evidence, a November 1 delivery date strongly suggests an October 31 mailing. We find that, through habit evidence, an incomplete Form 3877, and other documentary evidence, respondent has come forward with evidence sufficient to prove an October 31 mailing. *Magazine v. Commissioner, supra; Keado v. United States, supra.*

Accordingly, the burden of production now shifts to petitioners to show that respondent failed to timely mail the notice. Petitioners contend that while respondent is able to establish his procedure through the use of habit evidence, he is unable to show that these procedures were followed. They point to evidence showing that respondent failed to

follow several of his established procedures. Specifically, they note that contrary to established procedures, the 90-Day clerk failed to obtain a Postal Service stamp, failed to obtain the initials of the postal employee, and failed to make a final check for both items. In rebuttal, petitioners also offer the testimony of respondent's employees, Gibbons and Barber, affirming that these procedures were not followed. They also argue that the employees' lack of personal knowledge as to the preparation and mailing of petitioners' notice further undercuts the reliability of respondent's habit evidence. Despite these weaknesses, we find that respondent has shown an October 31 mailing.

Petitioners also seek to prove untimely mailing through inferences of post-October 31 mailing derived from the testimony of both petitioners' and respondent's postal witnesses. They assert that both witnesses testified that in almost all cases certified mail sent from Chicago undergoes processing similar to first class mail; it arrives in Winnetka overnight and a delivery is attempted on the very next day. Under this operating plan, a notice mailed from Chicago on October 31 would have arrived in Winnetka on November 1. Moreover, a 4-day delivery delay is very unusual, especially where there are no signs of misrouting. Accordingly, since there is no patent evidence of mishandling and since an initial delivery attempt of petitioners' envelope was made on November 5, petitioners would have us infer that the envelope must have been mailed from Chicago on Monday, November 4, 1985. We point out that the parties stipulated that respondent's records did not contain any indication of an issuance of a notice to petitioners during the period November 1-5, 1985. Thus, while the evidence indicates that there may have been a postal delay in delivering petitioners' notice, it does not prove that the notice was not delivered by respondent for mailing on October 31.

Petitioners also argue that the erratic delivery dates on the Postal Service Forms 3849-A and 3849-B from the Form 3877 in issue indicate that the envelopes listed on that form were mailed by respondent in an irregular manner. In support of this position, they advance several arguments: First, they assert that the Forms 3849-B corresponding to articles 786106 and 786108 indicate a second delivery

attempt on November 1; therefore, those notices were mailed sometime before October 31. Second, petitioners contend that the Forms 3849-A corresponding to other envelopes indicate initial delivery attempts 3 to 5 days after October 31, far beyond the normal next-day delivery attested to by both respondent and petitioners' postal witnesses; therefore, these articles were mailed sometime after October 31. Lastly, they argue that article 786114's return to respondent on November 18, 17 days after the normal delivery date, indicates that such envelope could not have been mailed on or before October 31. Petitioners conclude that these delivery results, when contrasted with the normal delivery patterns of the envelopes listed on the contiguous Forms 3877, indicate that the envelopes listed on the Form 3877 at issue were mailed in a highly irregular manner. Accordingly, it is reasonable to conclude that the notices listed on the Form 3877 at issue were not mailed by respondent in the alleged manner on the alleged date.

These delivery results are inconclusive and do not convince us that the envelopes on the Form 3877 at issue were mailed by respondent on different days. In fact, many of the Postal Service forms indicate that some envelopes were available for pickup on November 1. While the erratic delivery pattern connected with these notices remains unexplained, we cannot resort to conjecture about how or when they were delivered. *August v. Commissioner*, 54 T.C. at 1538-1539.

We also decline to adopt petitioners' recommendation that the mailing requirements applicable to taxpayers under section 7502 be imposed on respondent in proving mailing under section 6212. In a timely mailing case, our inquiry focuses on whether respondent mailed the statutory notice in accordance with section 6212 and the case law construing that section.[6]

Additionally, we do not agree that respondent's destruction of the annotated lists gives rise to an adverse inference sufficient to require a finding that petitioners have met their burden of proof. As a basis for this argument, petitioners cite *Nation-Wide Check Corp. v. Forest Hills*

---

[6]See *Epstein v. Commissioner, supra.*

*Distributors,* 692 F.2d 214 (1st Cir. 1982).[7] In *Nation-Wide,* a money order vendor sued the assignee for the benefit of creditors to recover the proceeds of money order sales previously held by the defendant. After commencement of the suit, the assignee allowed the destruction of records which were relevant and necessary to proving plaintiff's right to the proceeds. Affirming the District Court, the U.S. Court of Appeals for the First Circuit held that where the assignee was aware of the suit and was familiar with the records, his destruction of the records raised an inference adverse to the assignee sufficient to allow plaintiff to meet its burden of tracing the proceeds to the distributor's bank account.

Assuming we were to employ the *Nation-Wide* rationale, petitioners have convinced us that the lists are relevant to whether the certified number assignment procedure was followed. It is also plausible that, generally, respondent's employees could have been aware of the usefulness of the lists in the present controversy. But, unlike *Nation-Wide,* there is no specific indication that the information in the list either proved or would prove petitioners' contentions. Moreover, respondent has adduced sufficient uncontradicted evidence proving that the mailing occurred on October 31. After a review of all of the facts and circumstances in this case, we hold that even if we were willing to employ the rationale of *Nation-Wide,* it would not change the outcome of this case.

We conclude that petitioners have failed to carry their burden of persuasion. Therefore, we hold that the notice was timely mailed.

To reflect the foregoing,

*An appropriate order will be issued.*

---

[7]See also *Brown & Williamson Tobacco Corp. v. Jacobson,* 827 F.2d 1119, 1134-1136 (7th Cir. 1987), cert. denied sub nom. *CBS, Inc. v. Brown & Williamson Tobacco Corp.,* 485 U.S. 993 (1988) (a court and a jury are entitled to presume that documents destroyed in bad faith while litigation is pending would be unfavorable to the party that has destroyed the documents).