T.C. Memo. 2008-147

UNITED STATES TAX COURT


EARL W. AND MARILYN L. MCCLASKEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18744-06.                    Filed June 9, 2008.


<u>Edward T. Perry</u>, for petitioners.

<u>David Rakonitz</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined that petitioners are
liable for additions to tax for negligence under section
6653(a)(1)[1] of $169 and $175 for 1983 and 1985, respectively, and

_____

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue.  Rule
references are to the Tax Court Rules of Practice and Procedure.
(continued...)

under section 6653(a)(2) for 50 percent of the interest due on $3,386 and $286, respectively. The issue for decision is whether respondent timely mailed notices of the beginning of an administrative proceeding (NBAPs) and notices of final partnership administrative adjustment (FPAAs) with respect to Contra Costa Jojoba Research Partners (CCJRP) for the years at issue.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California when their petition was filed.

After attending seminars in 1983 on the benefits of investing in the research and development of methods of growing and enhancing jojoba plants, petitioners decided to invest in CCJRP, a limited partnership that purported to do work with the jojoba plant. In 1983 they received a 2.857-percent interest in CCJRP in exchange for $5,500 cash and a $8,250 promissory note.

---

[1](...continued)
Amounts are rounded to the nearest dollar.

[2]In their pretrial memorandum petitioners raised the issue of whether they were negligent in claiming losses with respect to CCJRP on their 1983 and 1985 returns. In their opening and reply briefs petitioners expressly state that the only issue for decision is whether respondent timely mailed NBAPs and FPAAs. It is clear that petitioners intended to abandon or concede all other issues. Because petitioners bear the burden of proof on those issues, see Rule 142(a), we need not address them.

In 1983 and 1985 CCJRP provided petitioners Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., in which CCJRP allocated petitioners ordinary losses of $12,500 and $1,290, respectively. In turn, on their 1983 and 1985 joint Forms 1040, U.S. Individual Income Tax Return, petitioners claimed ordinary losses with respect to their interest in CCJRP of $12,500 and $1,290, respectively.

On April 12, 1989, respondent issued FPAAs for 1983 and 1985 to CCJRP's tax matters partner. On July 13, 1989, a petition in the name of CCJRP, Charles B. Toepfer, Tax Matters Partner, was filed with the Court at docket No. 17323-89. On January 28, 1994, to settle the case at docket No. 17323-89, the tax matters partner and respondent filed a stipulation to accept and be bound by the result in Utah Jojoba I Research v. Commissioner (Utah Jojoba I), a test case at docket No. 7619-90. Petitioners testified that the only documents they received with respect to CCJRP were Schedules K-1 and that they knew nothing of the partnership proceedings.

We issued our opinion in Utah Jojoba I on January 5, 1998, holding that the partnership was not entitled to deduct its losses for research and development expenditures. See Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6. On April 11, 2005, the Court entered a decision against CCJRP sustaining

the partnership item adjustments as determined and set forth in
the FPAAs. That decision was not appealed.

On June 12 and July 3, 2006, respondent timely issued
petitioners affected items notices of deficiency for the years at
issue disallowing the CCJRP losses petitioners claimed.[3]
Petitioners timely filed a petition, and trial was held on
October 24, 2007.

OPINION

Notice of Partnership Proceedings Required

The tax treatment of a partnership item generally is
determined at the partnership level pursuant to the unified audit
and litigation procedures set forth in sections 6221 through
6231.[4] Tax Equity and Fiscal Responsibility Act of 1982, Pub. L.
97-248, sec. 402(a), 96 Stat. 648. On the other hand,
nonpartnership items are determined at the individual partner
level. Affiliated Equip. Leasing II v. Commissioner, 97 T.C.
575, 576 (1991). Partnership items include each partner's
proportionate share of the partnership's aggregate items of
income, gain, loss, deduction, or credit. Sec. 6231(a)(3); sec.

---

[3]The limitations period in this case expired on July 10,
2006, 1 year and 90 days after the Court's Apr. 11, 2005,
decision was entered. See secs. 6229(d), 7481(a)(1), 7483; Ghose
v. Commissioner, T.C. Memo. 2008-80.

[4]These procedures apply with respect to all taxable years of
a partnership beginning after Sept. 3, 1982. Sparks v.
Commissioner, 87 T.C. 1279, 1284 (1986); Maxwell v. Commissioner,
87 T.C. 783, 789 n.4 (1986).

301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs.  A nonpartnership item is an item which is not a partnership item. Sec. 6231(a)(3) and (4).

Section 6223(a) generally provides that the Commissioner shall mail to each partner an NBAP with respect to a partnership item, as well as an FPAA resulting from any such proceeding. Section 6223(e)(2) provides that the Commissioner's failure to provide notice of partnership-level proceedings to a partner may result in that partner's share of partnership items being treated as nonpartnership items.[5]  See sec. 6231(b)(1)(D).

Petitioners contend that the CCJRP partnership items became nonpartnership items by virtue of respondent's failure to notify them of partnership-level proceedings.  See Crowell v. Commissioner, 102 T.C. 683 (1994).  If respondent did not provide petitioners with proper notice of the partnership proceedings and petitioners' share of partnership items is treated as a nonpartnership item, the validity of the affected items deficiency notices is in question.  See id. at 691.  The Commissioner cannot issue a valid affected items deficiency notice to a partner if that partner's share of partnership items is entitled to nonpartnership item treatment.  Id.  Where the

_____

[5]The parties dispute the effect of respondent's failure to mail an NBAP if an FPAA is properly mailed.  Because we determine that NBAPs were timely mailed, we need not address the parties' arguments on this point.

validity of an affected items deficiency notice is questioned in this manner, the Commissioner must demonstrate that he complied with the notice requirements set forth in section 6223(a). <u>Id.</u> at 691-692. As is the case with a notice of deficiency, the validity of properly mailed partnership notices is not contingent upon actual receipt by either the tax matters partner or a notice partner. <u>Id.</u> at 692; <u>Yusko v. Commissioner</u>, 89 T.C. 806, 810 (1987); <u>Downs v. Commissioner</u>, T.C. Memo. 2000-155.

<u>Mailing of the NBAPs</u>

As evidence of the mailing of the 1983 NBAP on October 10, 1985, respondent introduced an NBAP mailing log and the testimony of Peggy Allred, who is familiar with the practices and procedures for mailing NBAPs during the relevant period. For the years at issue, respondent did not mail NBAPs by certified mail. In 1985 respondent tracked NBAP mailings using a log. The 1983 NBAP mailing log is dated October 10, 1985, which matches the date on the 1983 NBAP. The log is initialed, which shows it was reviewed for accuracy. The log shows petitioners' names, address,[6] percentage interest in CCJRP, and petitioner husband's Social Security Number.

---

[6]Respondent mailed the NBAPs and FPAAs to petitioners' home address, where they had lived since 1965. Petitioners do not claim that the notices were sent to an incorrect address. Rather, they claim that the notices were not mailed at all.

As evidence of the timely mailing of the 1985 NBAP on September 14, 1987, respondent introduced the testimony of Peggy Allred and a Certification of NBAP Notices which respondent used to track the mailing of NBAPs in 1987. The date of the certification matches the date on the NBAP. The certification shows petitioners' names, address, percentage ownership in CCJRP, and petitioner husband's Social Security Number. It is signed and dated September 14, 1987.

The evidence indicates that respondent complied with all applicable procedures in mailing the NBAPs at issue. Nevertheless, petitioners testified that they did not receive the NBAPs. As with an FPAA, actual receipt of the NBAP is not necessary. Crowell v. Commissioner, supra at 692. Petitioners presented no other evidence which would tend to indicate the NBAPs were not properly mailed.[7] We therefore find on the preponderance of the evidence that the NBAPs for the years at issue were timely mailed to petitioners.[8]

---

[7]Respondent's disclosure office was at first unable to provide petitioners copies of certain NBAPs and FPAAs because the 1985 examination file was missing. These documents were later found. We draw no inference from respondent's temporary inability to locate the file.

[8]Sec. 6223(d)(1) provides that an NBAP be mailed more than 120 days before the date that the Commissioner mails the FPAA to the tax matters partner. Respondent mailed the 1983 and 1985 NBAPs on Oct. 10, 1985, and Sept. 14, 1987, respectively, and the FPAAs on Apr. 12, 1989, more than 120 days later.

Mailing of the FPAAs

As evidence of the timely mailing of the FPAAs on May 30, 1989, respondent introduced into evidence FPAA Certified Mail Listings for the years at issue and the testimony of Susan Kent, who is familiar with respondent's practices and procedures for FPAA mailings in 1989. In 1989 respondent mailed FPAAs by certified mail and tracked FPAA mailings by using an FPAA Certified Mail Listing. See Wayne Caldwell Escrow Pship. v. Commissioner, T.C. Memo. 1996-401. After preparation of the mail listings, respondent would correct any discrepancies between the actual mail dates and the dates on the listing.

As shown by postmaster stamps, the postmaster reviewed the FPAA Certified Mail Listings for accuracy. The postmaster stamped both listings with the date May 30, 1989. Petitioners' names, address, and ownership interest in CCJRP are on both FPAA Certified Mail Listings along with petitioner husband's Social Security Number.

An FPAA Certified Mail Listing is highly probative evidence of the fact and date of mailing. Id.; see Coleman v. Commissioner, 94 T.C. 82, 90-91 (1990). "There is a strong presumption in the law that a properly addressed letter will be delivered, or offered for delivery, to the addressee." Zenco Engg. Corp. v. Commissioner, 75 T.C. 318, 323 (1980), affd. without published opinion 673 F.2d 1332 (7th Cir. 1981).

Further, it is clear that in general, and in the absence of evidence to the contrary, compliance with certified mail procedures raises a presumption of official regularity in delivery with respect to notices sent by the Commissioner. See United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984); United States v. Ahrens, 530 F.2d 781, 784-785 (8th Cir. 1976); Clough v. Commissioner, 119 T.C. 183, 187-188 (2002).

The evidence indicates that respondent complied with all procedures in mailing the FPAAs at issue. Petitioners testified that they did not receive the FPAAs and that if delivery had been attempted, they would have accepted it. They further testified that they were unaware of the disallowance of CCJRP's losses. As stated previously, actual receipt of the FPAAs is not required. Crowell v. Commissioner, supra at 692. Petitioners failed to present any other evidence that would indicate the FPAAs were not properly mailed. Therefore, we find on the preponderance of the evidence that respondent timely mailed petitioners FPAAs with respect to CCJRP for the years at issue.[9]

Conclusion

Because respondent timely mailed all notices required by section 6223(a), the partnership items are not entitled to

---

[9]Sec. 6223(d)(2) provides that the Commissioner shall mail an FPAA to a notice partner within 60 days of the mailing of the FPAA to the tax matters partner. Respondent mailed the FPAAs to the tax matters partner on Apr. 12, 1989, and to the notice partners on May 30, 1989, less than 60 days later.

nonpartnership item treatment under section 6223(e)(2). Accordingly, the notices of deficiency are valid, and petitioners are liable for the additions to tax.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.