# United States Tax Court

T.C. Memo. 2025-87

DAX XAVIER JOHNSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 21253-21.                            Filed August 18, 2025.

————

Dax Xavier Johnson, pro se.

*Alexis T. Locklear* and *Victoria E. Cvek*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

URDA, *Chief Judge*: Petitioner, Dax Xavier Johnson, challenges a notice of deficiency issued by the Internal Revenue Service (IRS) with respect to his 2018 tax year. The notice determined a tax deficiency of $10,230, as well as additions to tax of $2,302 under section 6651(a)(1),[1] $1,432 under section 6651(a)(2), and $332 under section 6654 for tax year 2018. Before this Court, Mr. Johnson contests the mailing of the notice of deficiency. He also asserts that the notice failed to recognize certain deductions to which he was entitled.

After a review of the evidence adduced at trial, we conclude that the Commissioner properly mailed the notice of deficiency. We further sustain the deficiency (subject to certain concessions by the

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

**[\*2]** Commissioner), finding that Mr. Johnson failed to prove his entitlement to any of the deductions that he claimed.

FINDINGS OF FACT

We held trial in this case and draw the following facts from the parties' pleadings, certain deemed admissions (and accompanying exhibits), and the evidence admitted at trial. Mr. Johnson lived in Maryland when he timely filed his petition.[2]

I.  *Background*

Mr. Johnson is a mediator who worked for the City of Baltimore, Maryland, earning $76,927 in 2018. During that year, he also served on the board of the Family of Kaiyon, David & William Foundation, Inc. (Foundation). The Foundation was incorporated under Maryland law on July 24, 2018, and recognized by the IRS as a tax-exempt public charity under section 501(c)(3) as of that date.[3]

The roots of the Foundation lay in family tragedy, the death of Mr. Johnson's nephew. As Mr. Johnson saw it, the Foundation's mission was to find the killer of Mr. Johnson's nephew.[4] The Foundation completed its work and obtained justice for Mr. Johnson's nephew in 2019.

---

[2] Mr. Johnson's petition raised challenges with respect to his 2016 through 2020 tax years. We previously dismissed the case with respect to tax years 2016, 2017, 2019, and 2020 because he failed to establish our jurisdiction for those years.

[3] We take judicial notice of the public records regarding the incorporation of the Foundation under Maryland law and the recognition of its status as a tax-exempt public charity, which can be found on websites maintained by the State of Maryland and the IRS, respectively. *See* Fed. R. Evid. 201(b); Business Entity Search, Md. Bus. Express, https://egov.maryland.gov/BusinessExpress/EntitySearch (last visited Aug. 13, 2025) (search by business name); Tax Exempt Organization Search, Internal Revenue Serv., https://apps.irs.gov/app/eos/ (last visited Aug. 13, 2025) (search by organization name).

[4] We assume that the Foundation disclosed this alleged purpose on its application for exempt status filed with the IRS, that this purpose qualifies under section 501(c)(3), and that expenditures for this purpose do not involve any private benefit or private inurement to Mr. Johnson. Mr. Johnson did not state these contentions in a pretrial memorandum in compliance with our standing pretrial order nor did he otherwise disclose them to opposing counsel before the trial. Since we sustain the denial of the deductions on substantiation grounds, we need not reach these issues.

**[\*3]**    Mr. Johnson did not file a timely tax return for 2018.  Pursuant to the authority conferred by section 6020(b), the IRS prepared a substitute for return based upon information received from third parties and issued a notice of deficiency on April 5, 2021.  The notice determined that Mr. Johnson had received gross income of $76,951, comprising wage income of $76,927, $1 of capital gains, and $23 in early retirement distributions.  The notice further allowed the 2018 standard deduction of $12,000.

The notice was mailed on April 5, 2021, to Mr. Johnson via certified mail at an address on Craddock Avenue in Baltimore (Craddock address).  Mr. Johnson has lived at the Craddock address for more than 24 years and used that address throughout these Court proceedings.  We find that the Craddock address was Mr. Johnson's last known address at the time of the mailing of the notice of deficiency.[5]

The mailing was memorialized on U.S. Postal Service (USPS) Form 3877, Firm Mailing Book For Accountable Mail, which listed the Craddock address as the destination for the letter and included the same certified mailing number as on the notice of deficiency.  The USPS Form 3877 featured March 31, 2021, in the box for "Date," as well as a USPS stamp dated April 5, 2021.

Around the same time, Mr. Johnson filed a late Form 1040, U.S. Individual Income Tax Return, for tax year 2018.  On this return Mr. Johnson reported, inter alia, wage income of $76,927, itemized deductions of $56,161, and a business loss of $4,830.  As to the itemized deductions, Mr. Johnson claimed $43,258 in charitable contributions by cash or check and $18,310 in medical and dental expenses.  He also reported $7,300 in noncash donations to Goodwill and Planet Aid, although he did not expressly claim a charitable contribution deduction for this amount.  On Schedule C, Profit or Loss From Business, Mr. Johnson identified his principal business as cleaning and reported income of $500 against $5,330 in expenses for advertising, travel, internet, cell phone, uniforms, and other supplies and office expenditures.

---

[5] Generally, a taxpayer's last known address is the address that appears on the taxpayer's most recently filed and properly processed federal tax return unless the IRS is given clear and concise notification of a different address.  Treas. Reg. § 301.6212-2(a).  Mr. Johnson does not contest that the Craddock address was his last known address at the time of the mailing of the notice of deficiency.

**[\*4]** II.    *Tax Court Proceedings*

After Mr. Johnson petitioned this Court, the case proceeded to trial with respect the 2018 tax year.   In the lead-up to trial, the Commissioner conceded the issues of income from capital gains and retirement distributions, leaving no dispute as to Mr. Johnson's 2018 income. We accordingly find that Mr. Johnson received $76,927 in income.

Mr. Johnson's testimony touched in part on the itemized and business expense deductions claimed on his return.[6]  He explained that the deductions stemmed largely from the Foundation, asserting that the cleaning business referenced on Schedule C and the various expenses incurred stemmed from the Foundation's work.   Mr. Johnson's testimony in this regard was not implausible, but it was vague and nonspecific, and he introduced no documentary evidence in support of these expenditures despite being given multiple opportunities to do so. We accordingly find that he has not carried his burden to substantiate the alleged expenses, as we will discuss.

As to his itemized deductions, Mr. Johnson conceded that the amount of his medical and dental expenses had been overstated by a factor of ten, reducing the claimed deduction from $18,310 to $1,800.  He did not testify as to the precise nature of these expenses or bring any supporting documentation.  We again find that he has not carried his burden to substantiate these expenses.

Mr. Johnson explained that the charitable donation of $43,258 reflected cash that he provided the Foundation in 2018 to support its efforts.  Over the Commissioner's objection, the Court admitted into evidence a letter addressed to Mr. Johnson dated January 22, 2019, from Kevin Wiggins, who was identified as the secretary of the Foundation.[7]

---

[6] As we will discuss, Mr. Johnson's petition did not identify any errors relating to deductions in the notice of deficiency.  Given Mr. Johnson's pro se status, we nonetheless will exercise our discretion to recount his positions at trial on these issues to evaluate his entitlement to any such deductions.

[7] We note that the address on the Foundation's letterhead was different from the one Mr. Johnson has used throughout these proceedings.

**[\*5]** The letter reflects a typeface for the date different from that used in the body.[8] It states in pertinent part:

> Our receipts indicate that your 2018 monetary donations total $43,258. [The Foundation] is a registered 501(c)(3) nonprofit organization . . . . Your donation is tax deductible to the extent allowable by law. There were no goods or service provided by [the Foundation] in return for this contribution.

Mr. Johnson had not previously provided this letter to the Commissioner's attorneys in the lead-up to trial, as required by our standing pretrial order. He testified that his contributions consisted of cash withdrawn from his bank account via ATM over the course of 2018 and then paid on behalf of the Foundation to various informants in return for information. Mr. Johnson explained that "if you're dealing with something . . . as serious as murder . . . cash is usually how people want to be paid." Mr. Johnson further represented that he had retained withdrawal receipts, which he did not supply to the IRS or at trial.

OPINION

I.  *Jurisdictional Principles*

Like all federal courts, we are a court of limited jurisdiction, which we may exercise only to the extent authorized by Congress. *See* I.R.C. § 7442; *see also Commissioner v. Zuch*, 145 S. Ct. 1707, 1712 (2025); *Commissioner v. McCoy*, 484 U.S. 3, 7 (1987); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). "This Court's jurisdiction in a deficiency case is predicated on a valid notice of deficiency and a timely filed petition." *Cano v. Commissioner*, T.C. Memo. 2025-65, at \*3; *see also* I.R.C. §§ 6213, 7442; Rule 13(a); *Hallmark Rsch. Collective v. Commissioner*, 159 T.C. 126, 130, 166–67 (2022); *Monge v. Commissioner*, 93 T.C. 22, 27 (1989). A notice of deficiency will generally be deemed valid, whether or not the taxpayer receives it, if it is mailed to the taxpayer's last known address by certified or registered mail. *See* I.R.C. § 6212(b); *see also Yusko v. Commissioner*, 89 T.C. 806, 810 (1987); *Cherizol v. Commissioner*, T.C. Memo. 2014-119, at \*7.

---

[8] The date of a donee organization's receipt is important as section 170(f)(8)(C)(ii) generally requires that the donor receive the acknowledgment no later than the due date for the tax return claiming the contribution deduction, i.e., no later than April 2019 for a 2018 contribution.

**[\*6]**   The Commissioner bears the burden of proving by competent and persuasive evidence the proper mailing of the notice of deficiency. *Coleman v. Commissioner*, 94 T.C. 82, 90–91 (1990); *see also Cano*, T.C. Memo. 2025-65, at \*3.  If the Commissioner establishes that the notice existed and produces documentary evidence showing that it was sent to the taxpayer's last known address, he generally is entitled to a presumption of proper mailing.  *See Coleman*, 94 T.C. at 90; *Magazine v. Commissioner*, 89 T.C. 321, 327 n.8 (1987) (holding that USPS Form 3877 constitutes direct evidence of the date of mailing a notice of deficiency).

"[W]here the existence of the notice of deficiency is not disputed, a properly completed [USPS] Form 3877 by itself is sufficient, absent evidence to the contrary, to establish that the notice was properly mailed to a taxpayer." *Coleman*, 94 T.C. at 91; *see also Davis v. Commissioner*, T.C. Memo. 2025-72, at \*4.  "A failure to comply precisely with the [USPS] Form 3877 mailing procedures may not be fatal if the evidence adduced is otherwise sufficient to prove mailing." *Coleman*, 94 T.C. at 91; *see also Bobbs v. Commissioner*, T.C. Memo. 2005-272, 2005 WL 3157919, at \*3.

Here the Commissioner supplied a USPS Form 3877 that contains the following information: (1) a USPS date stamp of April 5, 2021; (2) the signature of the USPS employee who received the notice; (3) the number of notices submitted on that date; (4) Mr. Johnson's name and his last known address; and (5) the certified mail article number of the corresponding notice of deficiency.  The USPS Form 3877 reflects one omission in that it does not bear the signature (or initials) of the IRS employee who issued the notice.  We have previously held that this omission, together with other mistakes and omissions, "render[s] the presumption of official regularity inapplicable." *Schlegel v. Commissioner*, T.C. Memo. 2016-90, at \*10; *see also Bobbs v. Commissioner*, 2005 WL 3157919, at \*3 ("Although an incomplete certified mailing list that does not contain all of the information required by [USPS] Form 3877 is insufficient to create a presumption of proper mailing, it nevertheless has some probative value.").

Regardless of whether that presumption applies here, on the preponderance of the evidence we find that the Commissioner has provided otherwise sufficient evidence to establish that the IRS mailed the notice of deficiency to Mr. Johnson.  *See, e.g., Bradley*, T.C. Memo. 2024-7, at \*7; *Bobbs v. Commissioner*, 2005 WL 3157919, at \*3.  Specifically, the Commissioner has introduced the notice of deficiency,

**[\*7]** which bears the same mailing date, mailing address, and certified mail article number as the corresponding certified mailing list.

Mr. Johnson does not contest any of these points but argues that the presence of two dates (March 31, 2021, and the stamp date of April 5, 2021) on the Form 3877 implies irregularity. The fact that the document includes the date of March 31 in no way contradicts the stamp showing that mailing occurred on April 5. In any event, Mr. Johnson plainly suffered no prejudice that might call into question the validity of the notice as he filed his petition within the 90-day period to do so. *See, e.g., Clodfelter v. Commissioner*, 527 F.2d 754, 757 (9th Cir. 1975) ("[I]f mailing results in actual notice without prejudicial delay (as clearly was the case here), it meets the conditions of [I.R.C. §] 6212(a) . . . ."), *aff'g* 57 T.C. 102 (1971); *Cano*, T.C. Memo. 2025-65, at \*3 ("A notice of deficiency may be deemed valid . . . if the taxpayer was not prejudiced by the error.").

Accordingly, even if the Commissioner does not benefit from the presumption of proper mailing, the dated copy of the notice of deficiency, combined with the incomplete certified mailing list, is sufficient to show that the notice of deficiency for the year at issue was mailed to Mr. Johnson at his last known address. *See, e.g., Coleman*, 94 T.C. at 92; *Bobbs v. Commissioner*, 2005 WL 3157919, at \*3.

II.    *Governing Standards*

A.    *Burden of Proof*

The IRS's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving error in the determinations. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). A taxpayer bears the burden of proving entitlement to any deduction or credit claimed on his return, showing satisfaction of the specific requirements for each deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

Although section 7491(a)(1) shifts the burden of proof to the Commissioner in certain defined circumstances, Mr. Johnson does not contend, and the evidence does not establish, that the burden does so here. The burden thus remains with Mr. Johnson.

**[\*8]**   B.   *Recordkeeping*

A taxpayer is required to keep sufficient records to substantiate his gross income, deductions, credits, and other tax attributes. *See* I.R.C. § 6001; Treas. Reg. § 1.6001-1(a); *see also* Treas. Reg. § 1.6001-1(e) ("The books or records . . . shall be retained so long as the contents thereof may become material in the administration of any internal revenue law."). Adequate substantiation must establish the nature, amount, and purpose of a claimed deduction. *See, e.g., Higbee v. Commissioner*, 116 T.C. 438, 440 (2001); *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976). The failure to keep and present accurate records counts heavily against a taxpayer's attempted proof. *See Rogers v. Commissioner*, T.C. Memo. 2014-141, at \*17.

For some types of expenses lack of substantiation can be overcome. *See, e.g., Phillips v. Commissioner*, T.C. Memo. 2013-215, at \*22–23. If a taxpayer establishes that a deductible expense has been paid but cannot establish the precise amount of the expense, the Court may estimate the amount. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). But the Court will not estimate a deductible expense unless the taxpayer presents a sufficient evidentiary basis on which an estimate can be made. *See Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985); *Nwafor v. Commissioner*, T.C. Memo. 2025-27, at \*5; *Rodriguez v. Commissioner*, T.C. Memo. 2009-22, 2009 WL 211430, at \*4 (stating, with respect to the *Cohan* rule, that "we can't just guess"). No estimates can be made of expenses governed by the strict substantiation requirements of section 274.

III.   *Analysis of Claimed Deductions*

Mr. Johnson's late 2018 tax return claims business expense deductions as well as itemized deductions for medical and dental expenses and charitable contributions. Mr. Johnson, however, failed to assign error in his petition or at any other point before trial to the notice's general determination that he was entitled to only the 2018 standard deduction. *See* Rule 34(b)(1)(G). He thus has conceded these points. *See, e.g., Funk v. Commissioner*, 123 T.C. 213, 218 (2004); *Swain v. Commissioner*, 118 T.C. 358, 363–65 (2002).

Even if we were to entertain the issues Mr. Johnson detailed at trial, we would not find in his favor. We will take each in turn.

[*9]    A.    *Business Expense Deductions*

Section 162(a) permits a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  "A taxpayer's general statement that expenses were paid in pursuit of a trade or business is insufficient to establish that the expenses had a reasonably direct relationship to any such trade or business." *Sham v. Commissioner*, T.C. Memo. 2020-119, at *58.  The taxpayer bears the burden of substantiating expenses underlying his claimed deductions.  *See* Rule 142(a); Treas. Reg. § 1.6001-1(a), (e).

As an initial matter, Mr. Johnson fails to convince us that he was in the trade or business of cleaning as reported on Schedule C.  "The determination of whether a taxpayer's activities qualify as a trade or business is a question of fact." *Nelson v. Commissioner*, T.C. Memo. 2013-259, at *12 (citing *Higgins v. Commissioner*, 312 U.S. 212, 217 (1941)).  Whether a taxpayer is engaged in a trade or business is determined using a facts and circumstances test under which courts have focused on the following three factors: (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. *Root v. Commissioner*, T.C. Memo. 2025-51, at *10; *see also Commissioner v. Groetzinger*, 480 U.S. 23, 36 (1987).

Although Mr. Johnson vaguely testified that he operated a cleaning business to support the Foundation, he could not identify the purported business's rates, frequency of jobs, days worked, or clients.  Mr. Johnson's testimony fails to show either that he undertook any cleaning work for profit or that he was regularly and actively involved in the activity.  We thus are unpersuaded that he was in the cleaning business in 2018.

Moreover Mr. Johnson fails to substantiate the expenses he reported on Schedule C, including advertising, office expense, supplies, travel, internet, cell phone, and uniforms.  He offered no supporting documentation that might establish the dates, amounts, or business purposes of the expenditures.  In fact his testimony suggests that many of these alleged expenses were geared to the work of the Foundation and

**[\*10]** were not connected to any cleaning business.[9] Given the total dearth of any substantiation, we conclude that Mr. Johnson has not met his burden to substantiate the business expenses reported on Schedule C.

B.     *Itemized Deductions*

On his return Mr. Johnson claimed deductions for medical and dental expenses and cash charitable contributions to the Foundation and further reported noncash charitable contributions to Goodwill and Planet Aid.

1.      *Deductions for Medical Expenses and Noncash Charitable Contributions*

We will be brief as to the reported medical and dental expenses and the noncash charitable contributions. To deduct either, a taxpayer must provide sufficient substantiation of these expenses, as outlined in the Code and the Treasury regulations. *See* I.R.C. § 170(f)(8) (requiring a contemporaneous written acknowledgment of any contribution exceeding $250); Treas. Reg. § 1.213-1(h) (outlining substantiation requirements to claim a deduction under section 213(a) for medical and dental expenses); Treas. Reg. § 1.170A-13(b) (outlining substantiation requirements for charitable contribution of property other than money). Despite being given many opportunities, Mr. Johnson declined to provide any substantiation with respect to his medical expenditures and his donations to Goodwill and Planet Aid, and he accordingly is not entitled to a deduction for either category of expenses. *See, e.g.*, *Kunkel v. Commissioner*, T.C. Memo. 2015-71, at \*8–12 (concluding that taxpayers failed to satisfy contemporaneous written acknowledgment and other substantiation requirements for claimed noncash charitable contributions); *Davis v. Commissioner*, T.C. Memo. 2006-272, 2006

---

[9] We note that Mr. Johnson's testimony might suggest that the expenditures were incurred incident to volunteer work on behalf of the Foundation. Although no deduction is allowed for volunteer work, "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution." *Van Dusen v. Commissioner*, 136 T.C. 515, 522–23 (2011) (quoting Treas. Reg. § 1.170A-1(g)). "A taxpayer must substantiate the amounts of unreimbursed expenses incurred while rendering services to a charity in order for the expenses to be deductible." *Oliveri v. Commissioner*, T.C. Memo. 2019-57, at \*27. Mr. Johnson's failure to offer any substantiation for the reported expenses also precludes a deduction for unreimbursed expenses incident to charitable work.

[*11] WL 3780743, at *14 (concluding that the taxpayers failed to adequately substantiate medical and dental expenses).

### 2. *Deduction for Cash Charitable Contributions*

We now turn to the major issue in this case, i.e., Mr. Johnson's claimed charitable contribution deduction for purported cash donations to the Foundation. Section 170(a)(1) permits a deduction for any contribution made within the taxable year to a qualifying charitable organization. Contributions may be made in cash paid as "unreimbursed expenditures made incident to the rendition of services" to the organization, Treas. Reg. § 1.170A-1(g), but to verify a charitable contribution of money, the regulations require the taxpayer to maintain one of the following for each contribution: (1) a canceled check; (2) a receipt from the donee; or (3) in the absence of a check or receipt, other reliable written records, Treas. Reg. § 1.170A-13(a)(1). A receipt or record used for this purpose must show the name of the donee, the date of the contribution, and the amount of the contribution. *Id.*

For all contributions over $250, section 170(f)(8) requires a contemporaneous written acknowledgment from the donee organization that specifies the amount of cash and whether any goods or services were provided in return. Section 170(f)(17) further directs that no deduction is allowed for any cash contribution "unless the donor maintains as a record of such contribution a bank record or a written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution." On its face, the letter from the Foundation satisfies these requirements.

A donee organization's "written communication" that complies with section 170(f)(17), however, does not irrefutably prove the fact and deductibility of the donation it attests. We have reservations about the reliability of the Foundation's letter, stemming in no small part from Mr. Johnson himself. Although we found Mr. Johnson to be credible in the generalities of his testimony (i.e., we think he did pay some cash to informants in 2018), our confidence does not extend to the numbers he put on his return, which were shaky and unsupported. To recap Mr. Johnson acknowledged that the amount of medical expenses on his return was overstated by a factor of ten. And he seemed to have little insight (and no substantiation) regarding the income and expenses reported for the Schedule C cleaning business. In his testimony Mr. Johnson also conflated the expenses of that business with those of the Foundation. We thus begin with some skepticism.

**[*12]** Nor are our concerns assuaged by the letter itself. Mr. Johnson was himself a board member of the Foundation that produced the letter. We have no information, from Mr. Johnson or any other witness, about the Foundation's records that underlie the representations in its letter. The letter states that "receipts indicate that your 2018 monetary donations total $43,258." But we are unsure of the meaning of "receipts" in this context, given that Mr. Johnson testified that he made his donations in cash, by his own payment for Foundation operations such as securing witness participation. He further testified that he, not the Foundation, retained the ATM receipts that allegedly corresponded to his donations. And the amounts reflected by the purported receipts seem unusual given that Mr. Johnson's gross income totaled $76,927 in 2018.

Moreover, Mr. Johnson plainly had a close relationship with the Foundation, having organized it, obtained its tax exemption, and served on its board. This dynamic raises doubts as to whether the institutional safeguards that bolster the reliability of a charity's representation were in place. To put it another way, we cannot eliminate the possibility that the Foundation's letter simply took Mr. Johnson's word and validated a number that he had claimed.

These loose ends, against the backdrop of Mr. Johnson's own questionable reporting, convince us that this is an occasion where additional scrutiny is appropriate. *See, e.g., Davis v. Commissioner*, T.C. Memo. 2018-56, at *7–8. Mr. Johnson, however, did not offer any documentation that would lend credence to the Foundation's letter. As an initial matter, Mr. Johnson did not inform the Commissioner's attorneys about the Foundation or provide them with the letter before trial (as required by our standing pretrial order). The Commissioner's attorneys thus were unable to make any inquiry into the Foundation, its purposes, and its operations, much less to verify the amounts of any cash contributions. Nor did Mr. Johnson produce any of his own bank records (or records from the Foundation) as might support the idea that he donated more than half of his annual income in cash over the last six months of 2018.

Although we believe that Mr. Johnson likely supported the Foundation with some cash donations during 2018, we are unable to determine the amounts of these donations given the unreliability of the Foundation's letter and the undeveloped record before us. We accordingly conclude that Mr. Johnson has not satisfied his burden to prove the claimed charitable contribution deduction.

**[\*13]** IV.    *Additions to Tax*

The Commissioner has the burden of producing evidence with respect to the liability of any individual for any addition to tax.  I.R.C. § 7491(c).  He is relieved of this obligation where, as here, a taxpayer fails to raise the issue in his pleadings and is therefore deemed to have conceded it.  *See, e.g., Funk*, 123 T.C. at 218; *Swain*, 118 T.C. at 364–65.  We therefore conclude that Mr. Johnson is liable for the additions to tax determined in the notice of deficiency.

V.    *Conclusion*

We will sustain the Commissioner's determinations in his notice of deficiency, subject to concessions in his pretrial memorandum.

To reflect the foregoing,

*Decision will be entered under Rule 155.*