T.C. Memo. 2018-150

UNITED STATES TAX COURT

CHAD HENDERSON AND SHARON HENDERSON, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14187-16L.                    Filed September 11, 2018.

Chad Henderson and Sharon Henderson, pro sese.

<u>Emerald G. Smith</u> and <u>Bryant W. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  This case was commenced in response to a Notice of

Determination Concerning Collection Action(s) under Section 6320 and/or 6330,[1]

_____

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect at all relevant times.  All

(continued...)

[*2] sustaining respondent's Notice of Federal Tax Lien Filing to collect petitioners' unpaid Federal income tax liabilities for 2009 and 2010.

FINDINGS OF FACT

Respondent sent by certified mail a notice of deficiency for tax years 2009 and 2010 to petitioners' address in Anaheim, California (Anaheim address), on May 12, 2014 (one copy to each petitioner and one copy to petitioners' representative). At that time, and when petitioners timely filed their petition, both petitioners lived at that address. Mrs. Henderson continued to live at that address at the time of trial whereas Mr. Henderson received mail at that address and claimed to be a resident of California, but he also received mail in Utah where he lived temporarily. A certified mailing list bearing a U.S. Postal Service (USPS) stamp dated May 12, 2014, states: "STATUTORY NOTICES OF DEFICIENCY FOR THE TAX YEAR(S) INDICATED HAVE BEEN SENT TO THE FOLLOWING TAXPAYERS" and lists two pieces of mail received by the USPS on May 12, 2014, one addressed to Chad Henderson and the other addressed to Sharon Henderson, at their Anaheim address, for tax years 2009 and 2010.

---

[1](...continued)
monetary amounts are rounded to the nearest dollar.

**[\*3]** The notice determined deficiencies of $47,268 and $22,708 for 2009 and 2010, respectively. It also determined penalties for 2009 and 2010 under section 6662(a) of $9,140 and $4,542, respectively. Before the notice was issued respondent sent a letter dated April 10, 2014, to the Anaheim address that advised petitioners of these proposed deficiencies and penalties. The letter advised petitioners that if they did not return certain forms by April 21, 2014, respondent would issue a notice of deficiency. The letter gave the option of review by the Internal Revenue Service (IRS) Appeals Office.

Petitioners did not petition the Court within 90 days of the notice of deficiency being mailed, and respondent assessed the deficiencies with interest. The IRS filed a Notice of Federal Tax Lien (NFTL) and sent petitioners a Notice of Federal Tax Lien Filing on August 11, 2015. Petitioners submitted a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing, checking the box labeled "Withdrawal" as the reason they disagreed with the filing of the NFTL. They added the following explanation: "The filing of the NFTL was done prematurely. We sent certified Form 911 over 90 Days ago and we are awaiting on a response from the TASA. The reconsideration is due [sic] IRS Agent Tax & Accounting errors for those tax years." They did not propose any collection alternatives. Settlement Officer Dallam (SO Dallam) contacted

[*4] petitioners and their representative holding a power of attorney to schedule a telephonic hearing for December 16, 2015, and request any documentation showing financial hardship. Neither petitioners nor their representative contacted SO Dallam at the scheduled time. SO Dallam contacted petitioners' representative on December 23, 2015, and, at petitioners' representative's request, rescheduled the hearing for February 19, 2016.

At the hearing on February 19, 2016, petitioners disputed only the underlying liabilities and did not request collection alternatives. Petitioners' 2014 tax return was delinquent at the time of the hearing. Respondent's Case Activity Record includes the following notation by SO Dallam from the hearing on February 19, 2016:

> SO held conference with * * * [representative] and TP, SO advised them of the role of appeals, the purpose of the hearing and the ability to petition tax court. SO addressed appeal request. TP received NOD and petitioned to the taxpayer advocate. TP has been corresponding with them trying to get his income adjusted. TP stated the revenue agent added income from the corporate return that was already accounted for there. * * * [Representative] asked that appeals review this. SO explained that managerial approval is needed because of the prior opportunities. TP to send all information on or before 3/4/2016. SO will present this to the ATM for consideration once received.

On April 6, 2016, SO Dallam advised Mr. Henderson that Appeals would not consider the underlying liabilities and asked whether he wished to be

[*5] considered for a collection alternative. On April 11, 2016, SO Dallam recorded a conversation with petitioners' representative: "TP is disputing liability, cannot within CDP." In that conversation their representative expressed interest in an installment agreement and stated that petitioners would file their 2014 tax return so that they would be eligible for one. But petitioners did not file their 2014 tax return. Respondent then issued a notice of determination on June 3, 2016.

Petitioners timely petitioned the Court challenging the notice of determination on June 20, 2016. In the petition they stated: "IRS audited the 2009 and 2010 F1040 individual income tax return and taxpayer's liability was increased and we disagreed with the additional assessment. We are seeking to stop collection process until the correct additional tax, if any, is determined." We remanded the case for a supplemental hearing on whether the procedural requirements of section 6751(b) had been met, pursuant to our Opinion in Graev v. Commissioner, 147 T.C. 460 (2016), supplemented and overruled in part, 149 T.C. __ (Dec. 20, 2017).

On remand, the case was assigned to SO Hansen. SO Hansen and petitioners scheduled a supplemental hearing for July 6, 2017. SO Hansen explained the scope of the supplemental hearing and requested delinquent returns

[*6] and any financial documents. SO Hansen held a face-to-face hearing with petitioners' new representative on July 6, 2017. Petitioners' representative brought documents relating to petitioners' challenge to their underlying liabilities --including the notice of deficiency--but did not bring any delinquent tax returns or financial documents. SO Hansen set a July 14, 2017, deadline for petitioners to file their delinquent returns for tax years 2014 and 2015 and then extended the deadline to August 1, 2017, at their request. Petitioners failed to file their delinquent returns by the August 1, 2017, deadline.

Petitioners submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, on August 1, 2017. That form showed that petitioners had equity in their Anaheim home of $138,370, which exceeded their total outstanding tax liability for 2009 and 2010 of $69,976. Petitioners reported monthly living expenses of $9,762. Petitioners also reported a retirement account with $31,367 and two cars, one purchased in 2015 with a $1,052 monthly payment and the other an unencumbered 2006 vehicle. Petitioners did not attach any supporting documentation for their financial accounts, income, or living expenses. SO Hansen also confirmed that the Anaheim address was petitioners' last known address listed in the IRS' records at that time.

**[\*7]** On August 29, 2017, SO Hansen issued the Supplemental Notice of Determination, again sustaining the collection action as to the deficiencies on the grounds that petitioners were not in compliance with their tax filing obligations and had sufficient equity to pay the outstanding liabilities, including the retirement account and the equity in their home, and noted that petitioners had indicated that they had moved or were moving to Utah. SO Hansen abated the liabilities for the section 6662 penalties because he was unable to find documentation of written supervisory approval, as required by section 6751(b).

We denied respondent's subsequent motion for summary judgment, concluding that a material fact was in dispute--namely, whether petitioners had had a prior opportunity to challenge their underlying liabilities--on the basis of petitioners' claim that they had not received the notice of deficiency.

OPINION

Where the validity of the underlying tax liability is in issue, the Court reviews the Commissioner's determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the validity of the underlying tax liability is not properly in issue, the Court will review the settlement officer's administrative determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000). The settlement officer must verify that the requirements of any applicable

[*8] law or administrative procedure have been met, consider issues properly raised by the taxpayer, and consider whether the collection action balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. Secs. 6320(b) and (c), 6330(b), (c)(3).

A taxpayer may raise the underlying liability at a hearing if he did not receive any statutory notice of deficiency or otherwise have an opportunity to dispute his tax liability. Sec. 6330(c)(2)(B). If a notice of deficiency is properly mailed to the taxpayer at the taxpayer's last known address, the notice is valid even if the taxpayer did not receive it. See, e.g., United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984). So as part of the settlement officer's determination, he must verify that a valid notice of deficiency was issued to the taxpayer at the taxpayer's last known address. Sec. 6330(c)(1); Jordan v. Commissioner, 134 T.C. 1, 12 (2010); Hoyle v. Commissioner, 131 T.C. 197, 200 (2008). But even if the notice was properly mailed, the taxpayer may be able to challenge the underlying liability if the taxpayer can establish that no notice was received. Hoyle v. Commissioner, 131 T.C. at 199; Sego v. Commissioner, 114 T.C. at 609; Snodgrass v. Commissioner, T.C. Memo. 2016-235, at *14.

**[\*9]** Petitioners argue that they should be allowed to challenge their underlying liabilities because they did not have a prior opportunity to do so. Therefore we first must determine whether petitioners received the notice of deficiency, as respondent alleges.

Petitioners argue that the notice of deficiency was not properly mailed to them because the certified mailing list is missing a second part that shows what happened to the items on the list and because the copies of the notice of deficiency in the record do not bear the certified mail item numbers. We reject these arguments. First, petitioners did not explain what the missing second part was. We surmise that they may be referring to USPS Form 3849-A (used for initial delivery of a certified article to alert the recipient to its arrival) or USPS Form 3849-B (used as a delivery reminder when an item is not claimed within five days of initial delivery). See Coleman v. Commissioner, 94 T.C. 82, 85 (1990). But we have not required respondent to produce copies of those USPS forms to establish strict compliance with the procedures for a USPS Form 3877; rather we have allowed respondent to use those forms (among other evidence) to support a defective USPS Form 3877. See id. at 91-92. And other certified mailing lists that we have found to comply with the requirements for proper mailing also lacked these additional USPS forms. Fleming v. Commissioner, T.C. Memo. 2017-155,

**[\*10]** at \*8-\*9; <u>Garrett v. Commissioner</u>, T.C. Memo. 2015-228, at \*6-\*7.  Nor have we previously viewed the lack of a certified mailing list number on the notice of deficiency itself to negate a presumption of proper mailing.  Internal Revenue Manual pt. 4.8.9.11.3 (July 9, 2013) does not require that the certified mailing list number be written on the notice itself; rather the number must be on the Form 3877 and the envelope containing the notice.  We therefore hold that the notice was properly mailed.

We now turn to the real dispute between the parties--whether petitioners received the notice.  Mr. Henderson vigorously denied receipt at trial.  When confronted with SO Dallam's summary in the Case Activity Report stating that petitioners had received the "NOD", Mr. Henderson explained that the "NOD" to which he referred was the notice of determination at issue before us and argued that respondent uses "NOD" to mean both notice of deficiency and notice of determination.  He also acknowledged receiving the April 10, 2014, letter advising petitioners that if they did not return certain forms a notice of deficiency would be issued, but he argued that they did respond timely, and respondent did not wait the 7-11 days promised in the letter for that response but instead sent the notice of deficiency.  But the notice of deficiency was not issued until May 12, 2014, contradicting petitioners' argument.

**[*11]** Respondent also points out that petitioners consistently insisted that they did not owe the liabilities in both their hearing request and their submissions to the SOs; they did not claim that they did not receive a notice of deficiency or that they did not have a prior opportunity to challenge until now. Mr. Henderson countered that he was not a tax professional and asserted that this is what he meant--that is, he argues now that he meant that he had no prior opportunity to challenge when he claimed earlier that he did not owe the liabilities.

Petitioners' Form 12153 and petition are consistent with the conversations recorded by SO Dallam in which petitioners indicated they wanted another chance to challenge the liabilities, not that they never had a chance before that hearing. And Mr. Henderson's uncorroborated testimony does not convince us that petitioners never had that chance (because they did not receive the notice of deficiency). Simply put, we do not believe him.

First, his story has holes. His explanation for his failure to follow up regarding the status of the IRS audit after receiving the April 2014 letter is not plausible, especially as he was involved in a number of later audits and therefore had occasion to ask the IRS agent what happened to his response to that April 2014 letter. His argument that the "NOD" in SO Dallam's February 19, 2016, hearing notes referred to the notice of determination at issue before us overlooks

[*12] the fact that the notice of determination was not issued until June 3, 2016. He testified that he had no other audits before the audit for the years at issue so he could not have been confused about another notice of determination--the only "NOD" that appears to be outstanding at the time of petitioners' February 19, 2016, hearing is the notice of deficiency issued on May 12, 2014. Second, petitioners had representatives with them in the administrative hearing, making Mr. Henderson's arguments regarding failure to use the correct terms implausible. Finally, further tipping the scale for us was his use of the terminology "90-day letter" as a synonym for notice of deficiency. Given his fluidity with terms, we simply cannot accept his claims of ignorance and confusion. Because we find that petitioners received the notice of deficiency dated May 12, 2014, we conclude that they may not challenge their underlying liabilities.[2]

When the case was called for trial, the parties still had not received documents that respondent had subpoenaed from petitioners' bank. We therefore held a partial trial on the mailing issue and directed the parties to work together to review the documents and ordered further status reports from the parties regarding development of any additional evidence regarding petitioners' underlying

---

[2] Because Mrs. Henderson did not appear, technically she is in default. We will give her the same result as her husband and for the purposes of our findings of fact attribute his statements to her as well.

[*13] liabilities. Because we hold that petitioners may not challenge their underlying liabilities, that evidence is not relevant; and we will discharge as moot our pending order for further status reports.

We now consider whether the settlement officers abused their discretion in sustaining the collection action. For this purpose we consider respondent's position to be the position taken in the supplemental determination. See Kelby v. Commissioner, 130 T.C. 79, 86-87 (2008). The administrative record indicates that petitioners had multiple opportunities to present their position. First, petitioners and their representative had a telephonic hearing on February 19, 2016, that SO Dallam rescheduled after neither petitioners nor their representative called at the originally appointed time. Administrative hearings are informal and may consist of one or more oral or written communications. Katz v. Commissioner, 115 T.C. 329, 337-338 (2000) (holding that a face-to-face hearing is not a requirement); sec. 301.6320-1(d)(2), Q&A-D6, Proced. & Admin. Regs. Moreover, a face-to-face hearing will not be granted if the taxpayer has failed to file required returns. Schlegel v. Commissioner, T.C. Memo. 2016-90, at *12; sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs. Petitioners were not then in compliance with their tax filing obligations and thus it was reasonable for SO Dallam to proceed with a telephonic hearing. See Schlegel v. Commissioner, at

[*14] *13 (holding that it is not an abuse of discretion to deny a face-to-face hearing when the taxpayer failed to provide the requested financial documentation and failed to comply with income tax obligations). Finally on remand SO Hansen did hold a face-to-face hearing with petitioners' representative.

Whether to approve a proposed collection alternative is within the settlement officer's discretion. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007). Respondent's rejection of a proposed installment plan was reasonable and not an abuse of discretion because petitioners never filed their delinquent 2014 and 2015 tax returns, even after multiple invitations to do so. See Cavazos v. Commissioner, T.C. Memo. 2008-257. We likewise cannot conclude that SO Hansen abused his discretion when he concluded that petitioners' Form 433-A showed sufficient equity in their house because they indicated that they had moved and were attempting to sell it or when he concluded that the Form 433-A showed costs that exceeded national averages because petitioners attached no supporting documentation.

Finally, petitioners have not alleged that respondent otherwise failed to comply with the requirements set forth in section 6330; nor did we find anything in the record indicating a failure.

**[*15]**                              <u>Conclusion</u>

We therefore hold that petitioners are not entitled to challenge their

underlying liabilities, and we sustain the collection action at issue.

To reflect the foregoing,

<u>An appropriate decision will be</u>

<u>entered</u>.