128 T.C. No. 12


UNITED STATES TAX COURT



CRSO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 11804-05X.                    Filed April 30, 2007.



    P is a nonprofit corporation.  Its sole activity
involves renting out its two parcels of debt-financed
commercial real estate and distributing the profits to
a sec. 501(c)(3), I.R.C., organization.

    P applied for tax exemption under sec. 501(c)(3),
I.R.C.  In 2003, R sent a final adverse determination
letter to P at an incorrect address; P did not receive
the letter until R sent it to P's counsel in 2005.  P
filed its petition within 90 days of receiving the
final adverse determination letter.

    <u>Held</u>:  Because R's initial, misdirected adverse
determination letter was ineffective for purposes of
triggering the 90-day period under sec. 7428(b)(3),
I.R.C., P's petition was timely.  <u>Held</u>, <u>further</u>,
because P's rental activity is not excluded from
classification as a "trade or business" under sec.
502(b)(1), I.R.C., P is a feeder organization under
sec. 502, I.R.C., and is not operated exclusively for

charitable or other exempt purposes within the meaning of sec. 501(c)(3), I.R.C.

James J. Workland and Gary C. Randall, for petitioner.

Mark A. Weiner, for respondent.

OPINION

THORNTON, Judge:  Respondent denied petitioner's request for tax-exempt status under section 501(c)(3).[1]  Pursuant to section 7428, petitioner seeks declaratory relief.

The parties submitted this case to the Court without trial to be decided on the basis of the pleadings and the parties' stipulation as to the administrative record.  See Rules 122, 217(b).  The Court's decision will be based upon the assumption that the facts as represented in the administrative record, as stipulated, are true.  See Rule 217(b).

## Background

### Petitioner

On December 26, 2000, petitioner was incorporated in the State of Washington as a nonprofit corporation.  When it filed its petition, petitioner's principal place of business was in Spokane, Washington.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code, as amended; Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner characterizes its sole activity as receiving rental income from commercial real estate that it owns and distributing the net proceeds to Chi Rho Corp. (Chi Rho), a publicly supported section 501(c)(3) organization.

Articles of Incorporation

Petitioner's articles of incorporation state that it is organized and shall be operated exclusively for charitable, educational, and scientific purposes within the meaning of section 501(c)(3), by making distributions to carry out the charitable, educational, and scientific purposes of Chi Rho. The articles of incorporation further state that petitioner "is organized to act as a supporting organization for Chi Rho pursuant to section 509(a)(3)".

Board of Directors and Officers

Petitioner's initial board of directors consisted of three individuals: Hudson R. Staffield, Cynthia T. Staffield (collectively, the Staffields), and Peter A. Witherspoon. These three individuals also served as petitioner's president, secretary/treasurer, and vice president, respectively. They each devoted, on average, about 3 hours of service per week to these positions.

Petitioner's Real Estate Acquisitions

In 1997, the Staffields purchased two commercial retail buildings (the real estate) that are part of a retail center in

Wenatchee, Washington.  The Staffields paid $2,297,000 for the real estate, borrowing a portion of the funds from the Washington Trust Bank.

In December 2000, the Staffields gave the real estate to petitioner.  In a certificate of corporate resolution dated December 28, 2000, petitioner agreed to accept the real estate and to assume the outstanding mortgage obligation, which was then about $1.4 million.  Washington Trust Bank did not modify the original loan; the Staffields remained personally liable on the mortgage.

Leases

When the Staffields purchased the real estate and at all relevant times thereafter, the real estate was subject to preexisting long-term leases; the tenants were a sporting goods business and a cellular telephone business.  Petitioner characterizes the leases as "triple net leases", contending that the leases require "little or no expenditure of time or funds by the Lessor" and that petitioner is entitled to reimbursement from the lessees for "virtually all" costs it is required to pay under the terms of the lease agreements.

On April 18, 2001, petitioner entered into a management agreement with Kiemle & Hagood Co., which agreed to lease, manage, and operate the real estate for a $250 monthly fee and a percentage of future rents on any new leases with new tenants.

Petitioner's Application for Exemption

On October 15, 2001, petitioner submitted to respondent Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.  Part II of Form 1023 requests a "detailed narrative description of all the activities of the organization--past, present, and planned."  In response to this inquiry, petitioner's application stated:

> CRSO owns real estate in Wenatchee, Washington, which is used as a shopping center.  Its revenue is derived from triple net leases on that property to unrelated third parties.  CRSO is a "supporting organization" for Chi Rho Corporation, a California corporation holding a Section 501(c)(3) exemption.

Petitioner's Income Tax Returns

For taxable years 2001, 2002, 2003, and 2004, petitioner reported the following figures on its Forms 990-T, Exempt Organization Business Income Tax Return:

| Year | Gross rents | Gross unrelated debt-financed income | Average acquisition debt ratio | Unrelated business taxable income | Unrelated business income tax |
|---|---|---|---|---|---|
| 2001 | $275,570 | $144,233 | 52.34% | $37,684 | $5,653 |
| 2002 | 280,577 | 147,107 | 52.43 | 50,234 | 7,559 |
| 2003 | 254,317 | 130,643 | 51.37 | 30,064 | 4,510 |
| 2004 | 228,116 | 113,168 | 49.6 | 16,655 | 2,498 |

Denial of Petitioner's Application for Exemption

By letter dated November 8, 2002, respondent's Exempt Organizations Division proposed to deny petitioner's request for

tax-exempt status.  The letter concluded that petitioner is a feeder organization described under section 502 and does not meet the operational test for exemption under section 501(c)(3).

By letter dated November 25, 2002, petitioner requested a hearing with respondent's Appeals Office concerning this matter. In a letter dated November 4, 2003, the Appeals Office made a "final adverse determination", concluding:

> Your only activity is the rental of improved real property and forwarding net funds to an organization described in section 501(c)(3).  Your primary purpose is to operate a trade or business for profit.  As such, you are an organization described in section 502(a). You are not entitled to the exception set forth in section 502(b)(1) because not all of your rents would be excluded under section 512(b)(3).  Finally, you did not establish that you were operated exclusively for one or more purposes specified under section 501(c)(3) of the Code.

Respondent initially sent the determination letter to an incorrect address.  Petitioner received the determination letter only after respondent mailed it by certified mail to petitioner's counsel on June 14, 2005.  On June 27, 2005, petitioner filed its petition requesting section 7428 declaratory relief as to its tax-exempt status under section 501(c)(3).

## Discussion

A.   Jurisdiction   Our jurisdiction over this action for declaratory relief depends upon the filing of a timely petition.[2]

_____

[2] The parties do not disagree that petitioner timely filed its petition and that we have jurisdiction pursuant to sec.
(continued...)

Sec. 7428(a) and (b)(3); see Rule 210(c)(3). Petitioner was required to file its petition within 90 days of the Secretary's sending to the organization, by certified or registered mail, notice of his determination. Sec. 7428(b)(3). Respondent originally mailed the purported notice of adverse determination, dated November 4, 2003, to an incorrect address; respondent does not contend that it was mailed to petitioner's last known address. Petitioner did not receive this purported notice. Accordingly, this purported notice was ineffective for purposes of triggering the 90-day period under section 7428(b)(3). Cf. Roszkos v. Commissioner, 850 F.2d 514 (9th Cir. 1988) (holding that misaddressed purported notices of deficiency, which the taxpayers did not receive, were a nullity and ineffective for terminating a Form 872-A agreement to extend the period for assessment), vacating and remanding 87 T.C. 1255 (1986); Coffey v. Commissioner, 96 T.C. 161 (1991) (following Roszkos and decisions of other similarly aligned Courts of Appeals).

In Coffey v. Commissioner, supra, after sending the original deficiency notice to an incorrect address, the Commissioner issued another one and sent it to the correct address. Because the petition was filed within 90 days

_____

    [2](...continued)
7428(a). The parties' agreement is insufficient, however, to confer jurisdiction if it is otherwise lacking. The Court still must assure itself that jurisdictional conditions are satisfied. Evans Publg., Inc. v. Commissioner, 119 T.C. 242, 247 n.5 (2002).

thereafter, the petition was deemed timely.  Id. at 163, 167.

Similarly, petitioner received the notice of determination only

after respondent sent a second notice by certified mail to

petitioner's counsel on June 14, 2005.  The petition was filed

within 90 days thereafter and, accordingly, was timely.

B.    Whether Petitioner Is Entitled to Exempt Status

    1.  Statutory Provisions

    An organization that is organized and operated exclusively

for charitable purposes, as described in section 501(c)(3), is

exempt from Federal income tax unless exemption is denied under

section 502 or 503.  Sec. 501(a).  The central issue in this case

is whether petitioner's exemption is denied under section 502,

which deals with so-called feeder organizations.  Section 502(a)

provides:

> SEC. 502(a).  General Rule.--An organization
> operated for the primary purpose of carrying on a trade
> or business for profit shall not be exempt from
> taxation under section 501 on the ground that all of
> its profits are payable to one or more organizations
> exempt from taxation under section 501.

Section 502(b) excludes various types of activities from the

term "trade or business".  Of particular relevance here is

section 502(b)(1), which provides in part:

> SEC. 502(b).  Special Rule.-- For purposes of this
> section, the term "trade or business" shall not
> include--
>
>> (1) the deriving of rents which would be
>> excluded under section 512(b)(3), if section
>> 512 applied to the organization * * *

Thus, an organization's rental activity is not a "trade or business" for purposes of section 502 if the rents would be excluded from unrelated business taxable income (UBTI) under section 512(b)(3).[3] Section 512(b)(3) excludes from UBTI "all rents from real property", subject to various exceptions that are not germane here.[4] Section 512(b)(4) provides, however, that "Notwithstanding" this exclusion, rents from "debt-financed property" (as defined in section 514) are included in UBTI.[5]

2. <u>The Parties' Contentions</u>

Respondent contends that petitioner's only activities are: (1) Renting and managing two parcels of improved commercial real estate, and (2) distributing the profits to Chi Rho. Respondent contends that from 2001 through 2004, over half of petitioner's

---

[3] Sec. 511 taxes a tax-exempt organization's "unrelated business taxable income" (UBTI). Under the general rule of sec. 512(a), UBTI is the gross income that an exempt organization derives from an "unrelated trade or business" (as defined in sec. 513) that it regularly carries on, less applicable deductions and subject to modifications contained in sec. 512(b).

[4] In general, the exclusion for rents is denied if the rents depend in whole or part on the income or profits by any person from the property leased. Sec. 512(b)(3)(B)(ii). Also, the exclusion is limited if the rents attributable to personalty leased with real property are more than "incidental", sec. 512(b)(3)(A)(ii); the exclusion is denied if more than 50 percent of the rents are attributable to the personalty, sec. 512(b)(3)(B)(i).

[5] Debt-financed property generally means, subject to various exceptions, any property held to produce income and with respect to which there is acquisition indebtedness during the taxable year. Sec. 514(b)(1).

rental income was unrelated debt-financed income, which was not excluded by reason of section 512(b)(3). Consequently, respondent concludes, petitioner is operated for the primary purpose of carrying on a "trade or business" within the meaning of section 502, so as to preclude tax-exempt status under section 501(c)(3).[6]

Petitioner does not dispute that its real property holdings are debt-financed property within the meaning of section 514 or that its rental income is unrelated debt-financed income, which would give rise to UBTI pursuant to sections 512(b)(4) and 514(a)(1) if petitioner were an exempt organization. On brief, petitioner concedes that if respondent is correct "that debt financed real estate is, for purposes of Section 502(a), a prohibited trade or business because of Section 512(b)(4) * * * the organization is a feeder organization and not a Section 501(c)(3) entity", unless the exception in section 502(b)(1) applies.[7] Petitioner asserts, however, that it "does not agree

[6] Respondent also contends that the facts and circumstances show that petitioner's ownership and management activities associated with its commercial leasing activity are properly categorized as a "common law trade or business", without regard to the UBTI provisions. Because we base our decision on respondent's primary argument described in the text <u>supra</u>, we need not and do not address this alternative argument.

[7] According to petitioner's Forms 990-T, Exempt Organization Business Income Tax Return, for the years 2001 through 2004, petitioner's average acquisition debt ratios declined from a high of 52.43 percent in 2002 to 49.6 percent in 2004. Petitioner has

(continued...)

that simply having unrelated business income causes it to become a Section 502(a) organization".

> 3. <u>Is Petitioner's Rental Activity a "Trade or Business" Under Section 502?</u>

Petitioner contends that its "triple net leases" are "investment vehicles, not businesses".  Petitioner contends that under well-established criteria for determining a trade or business, as applied in <u>Commissioner v. Groetzinger</u>, 480 U.S. 23 (1987), and its progeny, these leases do not represent a regular and continuous activity so as to constitute a trade or business. Petitioner contends that there is no indication that Congress intended "trade or business" to mean anything different for purposes of section 502(a).  Therefore, petitioner concludes, section 502(a) fails to ensnare petitioner's rental activity in the "trade or business" classification.  Accordingly, petitioner suggests, we need not concern ourselves with the effect, if any, of the section 502(b)(1) escape hatch.  As petitioner puts it: "The recipe for rabbit soup is to 'first catch a rabbit'."

---

[7](...continued)
not raised, and accordingly we do not consider, any issue as to whether or how these declining ratios should affect a determination as to whether petitioner fits the description of an organization that carries on a business as its "primary purpose" within the meaning of sec. 502(a).

Whether or not respondent has caught a rabbit, it would appear that petitioner is in the soup. The question is whether petitioner belongs there.

Section 502(b)(1) expressly provides that its special rule as to the meaning of "trade or business" applies "For purposes of this section". Consequently, in construing section 502, we do not read subsection (a) in isolation but in conjunction with the special rule of subsection (b)(1), which addresses the meaning of the term "trade or business".

Section 502(b)(1) excludes from the term "trade or business" the deriving of rents that would be excluded from UBTI under section 512(b)(3) if section 512 applied to the organization. Under traditional principles of statutory construction, the statute's explicit provision excluding rental activity that meets this test should be understood as precluding the exclusion of rental activity that does not meet this test. See Silvers v. Sony Pictures Entmt., Inc., 402 F.2d 881, 885 (9th Cir. 2005); Catterall v. Commissioner, 68 T.C. 413, 421 (1977), affd. sub nom. Vorbleski v. Commissioner, 589 F.2d 123 (3d Cir. 1978); see also Black's Law Dictionary 620 (8th ed. 2004) (the statutory canon of construction "expressio unius est exclusio alterius" holds that "to express or include one thing implies the exclusion of the other, or of the alternative").

Consistent with this analysis, section 1.502-1(d)(2), Income
Tax Regs., provides in relevant part:

> For purposes of section 502, and this section, for
> taxable years beginning after December 31, 1969, the
> term "trade or business" does not include--
>
>      (i) the deriving of rents described in section
> 512(b)(3)(A),
>
> *     *     *     *     *     *     *
>
> For purposes of the exception described in subdivision
> (i) of this subparagraph, <u>if the rents derived by an
> organization would not be excluded from unrelated
> business income pursuant to section 512(b)(3) and the
> regulations thereunder, the deriving of such rents
> shall be considered a "trade or business"</u>. [Emphasis
> added.]

Petitioner contends that because the just-quoted sentence
containing the emphasized matter applies by its terms only "For
purposes of the exception described in subdivision (i) of this
subparagraph", it has no applicability in construing the meaning
of "trade or business" in section 502(a). We disagree. The
exception described in subdivision (i) of this regulation
applies, according to the regulation's initial words, "For
purposes of section 502, and this section". Inasmuch as this
exception applies for purposes of section 502 comprehensively,
the emphasized language <u>supra</u>, which delimits the exception, also
applies for purposes of section 502 comprehensively.
Accordingly, under the regulation, if rents are not excluded from

UBTI pursuant to section 512(b)(3), the deriving of such rents is a "trade or business" for all purposes under section 502.

Petitioner does not expressly contend that the subject regulation is invalid but contends that it is inconsistent with legislative history.  We disagree.

Before amendment in 1969, both sections 502 (in defining "trade or business" for purposes of the feeder organization rules) and 512(b)(3) (in defining UBTI) broadly excluded rents from real property and personal property leased with the real property.[8]  In 1969, Congress acted to curtail perceived abuses involving exempt organizations' engaging in commercial activity. See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1969, at 62-63 (J. Comm. Print 1970).  To that end, Congress amended section 512(b)(3) to narrow the exclusion

---

[8] Before sec. 502 was amended in 1969, it read in its entirety:

> An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under section 501 on the ground that all of its profits are payable to one or more organizations exempt under section 501 from taxation.  For purposes of this section, the term "trade or business" shall not include the rental by an organization of its real property (including personal property leased with the real property).

Similarly, before amendment in 1969, sec. 512(b)(3) excluded from the definition of "trade or business", for purposes of defining UBTI, "all rents from real property (including personal property leased with the real property)."

for real property and associated personal property rentals that previously had applied for purposes of determining UBTI. Tax Reform Act of 1969 (TRA), Pub. L. 91-172, sec. 121(b)(1), 83 Stat. 537. In place of the former exclusion, Congress provided the more limited exclusion now found in section 512(b)(3). S. Rept. 91-552, at 68-69 (1969), 1969-3 C.B. 423, 468. In addition, pursuant to new section 512(b)(4), rents that would be treated as unrelated debt-financed income pursuant to section 514(a)(1) were included as UBTI. TRA sec. 121(b)(2); see also Kern County Elec. Pension Fund v. Commissioner, 96 T.C. 845 (1991), affd. without published opinion 988 F.2d 120 (9th Cir. 1993).

In the same section of this legislation, Congress amended section 502 to eliminate the former exclusion for rental activity, replacing it with the more limited exclusion of section 502(b)(1), cross-referencing new section 512(b)(3). TRA sec. 121(b)(7), 83 Stat. 542. Congress also added other special rules in section 502(b)(2) and (3), similarly intended to conform the treatment of exempt organizations' business activities for purposes of the UBTI rules and the feeder organization rules under section 502. Id.; see S. Rept. 91-552, supra at 70, 1969-3 C.B. at 469. Describing this amendment to section 502, the Senate Finance Committee stated: "this amendment merely makes these rules [i.e., the UBTI rules and the feeder organization

rules] consistent."  S. Rept. 91-552, supra at 70, 1969-3 C.B. at 469.

In sum, the legislative history shows clearly that Congress, in replacing the former exclusion for real property (and associated personal property) rental activities with the more limited exclusion provided in section 502(b)(1), did so to preserve consistency between the feeder organization rules and the UBTI rules.  Petitioner's position, by contrast, assumes that the 1969 legislation introduced inconsistency, where it did not exist before, between the feeder organization rules and the UBTI rules.  In the light of the legislative history, as well as the plain meaning of the statute and the regulations, petitioner's position is untenable.

4.  Does the Section 502(b)(1) Exclusion Apply?

Alternatively, petitioner argues that even if its rental activity is deemed to be a "trade or business" under section 502(a), it qualifies for the section 502(b)(1) exclusion.  As previously noted, section 502(b)(1) excludes from the definition of "trade or business" the deriving of rents "which would be excluded under section 512(b)(3), if section 512 applied to the organization".  Petitioner contends, and respondent does not dispute, that petitioner's rents would be excluded under section 512(b)(3) if that provision were applied in isolation.  Petitioner does not dispute that its rentals, deriving from debt-

financed property, would be subject to UBTI pursuant to section 512(b)(4). Petitioner suggests, however, that the operation of section 512(b)(4) is irrelevant for purposes of establishing eligibility for the section 502(b)(1) exclusion. We disagree.

Section 512(b)(4) provides that "Notwithstanding" the various exclusions from UBTI contained in section 512(b)(1), (2), (3), and (5), unrelated debt-financed income is included in UBTI. Section 512(b)(4) thereby "nullifies these exclusions for income derived from 'debt-financed property'". Bartels Trust v. United States, 209 F.3d 147, 149 (2d Cir. 2000). Consequently, "if section 512 applied to the organization", as section 502(b)(1) provides, then section 512(b)(4) would preclude petitioner's exclusion of its rents from UBTI under section 512(b)(3). Hence, petitioner does not satisfy the requirements of the section 502(b)(1) exclusion.

Conclusion

Petitioner's rental activity constitutes a "trade or business" within the meaning of section 502(a); the exclusion under section 502(b)(1) does not apply. Consequently, petitioner is not operated exclusively for charitable or other exempt purposes and so is not entitled to exemption under section 501(c)(3).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.