# United States Tax Court

162 T.C. No. 11

BELAGIO FINE JEWELRY, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 35762-21.                                        Filed June 25, 2024.

————

R issued P a notice of employment tax determination under I.R.C. § 7436. Four days before the expiration of the 90-day period to file a petition for redetermination, P mailed his petition to the Court via a service that was not a designated private delivery service under I.R.S. Notice 2016-30, 2016-18 I.R.B. 676. The petition arrived at the Court one day after the 90-day deadline.

R filed a motion to dismiss for lack of jurisdiction, alleging that the 90-day period to petition the Court for redetermination of employment status is jurisdictional, and therefore P's failure to file within that period deprives the Court of jurisdiction. P objected to the motion on the ground that the deadline is a nonjurisdictional claim-processing rule subject to equitable tolling.

*Held*: The text, context, and relevant historical treatment of I.R.C. § 7436 do not support finding that the deadline to file a petition for redetermination of employment status is jurisdictional.

————

*Howard W. Gordon*, for petitioner.

*Lauren B. Epstein* and *Kimberly A. Daigle*, for respondent.

**Served 06/25/24**

OPINION

GREAVES, *Judge*: This case is before the Court on respondent's Motion to Dismiss for Lack of Jurisdiction on the ground that the petition was not filed within the time prescribed by section 7436 or section 7502.[1]  Petitioner objected to this motion, arguing that the 90-day deadline under section 7436(b)(2) is a claim-processing rule, subject to equitable tolling.  We hold that the 90-day deadline for filing a petition for redetermination of employment status is not jurisdictional.  Therefore, we will deny respondent's motion.  We reserve judgment on whether the 90-day deadline is subject to equitable tolling until it is presented to the Court in the proper dispositive motion.

*Background*

The following facts are stated solely for purposes of deciding respondent's motion and not as findings of fact in this case.  *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).  Petitioner's principal place of business is in Florida.

Petitioner did not file quarterly employment tax returns during the years 2016 and 2017 (periods at issue).  Following an audit, respondent issued a notice of employment tax determination under section 7436, dated August 24, 2021, wherein respondent determined that petitioner had an employee during the periods at issue.  Respondent determined deficiencies in employment tax, additions to tax for failure to timely file under section 6651(a)(1) and failure to timely pay under section 6651(a)(2), and penalties for failure to make deposit of taxes under section 6656.  The notice stated that the last day to file a petition with this Court was November 22, 2021.  Petitioner mailed a petition for redetermination of employment status to the Court via FedEx Express Saver on November 18, 2021.  The petition arrived at the Court on November 23, 2021.

On March 2, 2022, respondent filed a Motion to Dismiss for Lack of Jurisdiction on the ground that the petition was filed after the 90-day deadline prescribed by section 7436(b)(2).  On January 24, 2023, we ordered petitioner to file an objection to the motion.  Petitioner filed a

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

Notice of Objection to Motion to Dismiss for Lack of Jurisdiction, arguing that the 90-day deadline for filing a petition for redetermination of employment status is not jurisdictional. On September 14, 2023, respondent filed a First Supplement to Motion to Dismiss for Lack of Jurisdiction.

## *Discussion*

I. *Redetermination of Employment Status*

Employers are subject to employment taxes imposed by subtitle C based on wages paid to employees. These taxes include those imposed by the Federal Insurance Contributions Act (FICA), §§ 3101–3128, the Federal Unemployment Tax Act (FUTA), §§ 3301–3311, and income tax withholding under section 3402. An employer must make periodic deposits of amounts withheld from employees' wages and the employer's share of FICA and FUTA taxes. *See* §§ 6302, 6157; Treas. Reg. §§ 31.6302-1, 31.6302(c)-3. These employment taxes apply only in the case of employees and do not apply to payments made to independent contractors. *See* §§ 3121(a), 3401(a).

To ensure compliance with these tax obligations, the Internal Revenue Service (IRS) may audit an employer to determine the employment status of individuals performing services for the employer, the availability of section 530 relief,[2] and the amount of employment tax due. Section 7436(a) grants the Court jurisdiction to review such determinations:

> Sec. 7436(a). Creation of Remedy.—If, in connection with an audit of any person, there is an actual controversy involving a determination by the Secretary as part of an examination that—
>> (1) one or more individuals performing services for such person are employees of such person for purposes of subtitle C, or

---

[2] Section 530 of the Revenue Act of 1978 is a safe harbor provision which prevents the IRS from retroactively reclassifying "independent contractors" as employees if the following conditions are met: (1) the employer has consistently treated the workers at issue and similar situated workers as independent contractors, (2) the employer complied with the reporting requirements with respect to the worker at issue, and (3) the employer had a reasonable basis for its worker classification. *See* Revenue Act of 1978, Pub. L. No. 95-600, § 530, 92 Stat. 2736, 2885.

> (2) such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 with respect to such an individual,
>
> upon the filing of an appropriate pleading, the Tax Court may determine whether such a determination by the Secretary is correct and the proper amount of employment tax under such determination. Any such redetermination by the Tax Court shall have the force and effect of a decision of the Tax Court and shall be reviewable as such.

A taxpayer may petition this Court for review after the Commissioner either issues a notice of employment tax determination or makes a determination regarding a taxpayer's employment tax liability without the issuance of a notice. *See* § 7436(a); *SECC Corp. v. Commissioner*, 142 T.C. 225, 231–36 (2014).

Section 7436(b) provides several limitations relevant to our redetermination of employment status, including that the petition must be filed by the employer, that the petition must be filed within 90 days in certain circumstances (90-day deadline), and that no adverse inference may be drawn from the employer changing an employee's status during litigation.

Specifically, as to the 90-day deadline, section 7436(b)(2) provides:

> If the Secretary sends by certified or registered mail notice to the petitioner of a determination by the Secretary described in subsection (a), no proceeding may be initiated under this section with respect to such determination unless the pleading is filed before the 91st day after the date of such mailing.

II.    *Timeliness of the Petition*

As noted above, a petition for redetermination of employment status must be filed within 90 days after the notice of employment tax determination is mailed. § 7436(b)(2). Section 7502(a) treats a petition that arrives at the Court after a deadline as timely if the taxpayer delivered the petition to the U.S. Postal Service (USPS) on or before the due date. Section 7502(f) expands this rule to certain private delivery services "if such service is designated by the Secretary." In I.R.S. Notice 2016-30, 2016-18 I.R.B. 676, the IRS lists all private delivery services

that have been designated by the Secretary. This list does not include FedEx Express Saver. *See id.* To determine whether the petition in this case was timely filed under section 7436(b)(2) or 7502(a), we must first determine the date that the IRS mailed the notice of employment tax determination.

Generally, our caselaw provides that the Commissioner bears the burden of proving, by competent and persuasive evidence, the date that a notice was mailed. *Coleman v. Commissioner*, 94 T.C. 82, 90 (1990); *Magazine v. Commissioner*, 89 T.C. 321, 324 (1987); *August v. Commissioner*, 54 T.C. 1535, 1537 (1970). We apply this standard in deficiency and collection due process cases. *See, e.g.*, *Cataldo v. Commissioner*, 60 T.C. 522, 524 (1973), *aff'd per curiam*, 499 F.2d 550 (2d Cir. 1974); *Portwine v. Commissioner*, T.C. Memo. 2015-29, at *10, *aff'd*, 668 F. App'x 838 (10th Cir. 2016). We have not previously considered which party should bear the burden of proving the date of mailing for a notice of employment tax determination.

To allocate the burden of proof, we consider which party's motion we are presently considering and whether the information is peculiarly within the knowledge of one party. *See Pietanza v. Commissioner*, 92 T.C. 729, 736 (1989) (noting that the burden of proof generally rests on the moving party and that the Court may consider relative access to information in determining which party bears the burden of proof), *aff'd*, 935 F.2d 1282 (3d Cir. 1991) (unpublished table decision); *Phillips v. Commissioner*, T.C. Memo. 2024-44, at *9–10; *Casqueira v. Commissioner*, T.C. Memo. 1981-428, 1981 Tax Ct. Memo LEXIS 310, at *5 (assigning the Commissioner the burden of proof for date of mailing a notice of deficiency because it was his motion and the relevant information was peculiarly within his knowledge); *S. Cal. Loan Assoc. v. Commissioner*, 4 B.T.A. 223, 224–25 (1926). Early in its existence our predecessor, the Board of Tax Appeals, was confronted with the same question with respect to establishing the date a notice of deficiency was mailed. *S. Cal. Loan Assoc.*, 4 B.T.A. at 224–25. The Board noted that the operative date that commenced the period in which to file was the date the IRS mailed the notice of deficiency and not the date stamped on the notice. *Id.* The Board allocated the burden of proof as to the date of mailing to the IRS when considering its motion to dismiss for lack of jurisdiction because although the information was readily available to the taxpayer, it was "peculiarly within the knowledge of the [IRS]." *Id.*; *see also Casqueira*, 1981 Tax Ct. Memo LEXIS 310, at *5 ("[The IRS] must bear the burden of establishing the date of mailing the notice [of deficiency] because (1) this information is peculiarly within [its]

knowledge, and (2) it is [the IRS's] Motion to Dismiss for Lack of Jurisdiction which is being considered.").

The application of these principles dictates that the burden of showing the date of mailing for a notice of determination of employment tax should fall on the Commissioner. This case is before us on respondent's motion to dismiss for lack of jurisdiction. Additionally, like the operative date that commences the period to file a petition related to a notice of deficiency, the operative date that triggers the 90-day deadline to file a petition related to a notice of determination of employment tax is the mailing of the notice. The date that respondent mailed the notice of determination of employment tax is "peculiarly" within his knowledge. In fact, an IRS agent issuing a notice of determination of employment tax is required to complete and maintain a USPS Form 3877, Firm Mailing Book For Accountable Mail, to establish the date of mailing. *Internal Revenue Manual* (IRM) 4.8.10.8.2 (Apr. 20, 2018). We place on respondent the burden of proving, by competent and persuasive evidence, the date that a notice of determination of employment tax was mailed.

A properly completed USPS Form 3877 is direct evidence of the date and fact of mailing. *Coleman*, 94 T.C. at 90; *Magazine*, 89 T.C. at 326–27. Generally, if the IRS establishes that the notice existed and produces a properly completed USPS Form 3877 showing that the notice was sent to the taxpayer's last known address, the IRS is entitled to a presumption of proper mailing. *See Coleman*, 94 T.C. at 91. A properly completed USPS Form 3877 is one completed in compliance with the established IRS procedure for mailing. *See Lander v. Commissioner*, 154 T.C. 104, 118 (2020). Even without the presumption of proper mailing, the IRS can still prevail so long as it provides "otherwise sufficient" evidence of mailing. *See Coleman*, 94 T.C. at 91; *Portwine*, T.C. Memo. 2015-29, at *11.

There is no dispute that the notice of employment tax determination exists because petitioner attached the notice to its petition. Respondent attached to his motion to dismiss USPS Form 3877, related to the notice at issue. However, the USPS Form 3877 is incomplete because it does not bear a USPS stamp. *See Coleman*, 94 T.C. at 92; IRM 4.8.10.8.2.[3] Therefore, respondent is not entitled to

---

[3] Unlike the process for a notice of deficiency, the IRM process of mailing a notice of employment tax determination does not require the USPS employee to sign

the presumption of proper mailing to prove that he mailed the notice on August 24, 2021. *See Coleman*, 94 T.C. at 92.

While this evidence is insufficient to create a presumption of proper mailing, respondent may still satisfy his burden to show the date of mailing if the evidence of mailing is otherwise sufficient. *See id.* Although incomplete, the USPS Form 3877 is some probative evidence of the date of mailing. *Portwine*, T.C. Memo. 2015-29, at *11. The form is dated August 24, 2021, and bears the initials of the IRS agent that completed the form. The certified mailing number listed on the USPS Form 3877 matches that stamped on the notice of employment tax determination.

As additional evidence of the date of mailing, respondent provided three USPS Forms 3877, labeled 1-3, 2-3, and 3-3. The forms labeled 1-3 and 3-3 are properly stamped. As detailed above, the form labeled 2-3, which contains information related to the notice at issue, is incomplete. Each form is dated August 24, 2021. Respondent also provided a sworn declaration of Tax Examiner Technician Elizabeth Chavez-Bryant. Ms. Chavez-Bryant represents that she completed the three USPS Forms 3877, labeled the forms, and took all three forms and corresponding notices to the mail room on August 24, 2021.

We find that, through the incomplete USPS Form 3877, the sworn declaration, and other contiguous USPS Forms 3877, respondent has come forward with evidence sufficient to prove the August 24, 2021, mailing date. *See Coleman*, 94 T.C. at 92 (holding that habit evidence, contiguous USPS Forms 3877 that were properly executed, and an incomplete USPS Form 3877 were sufficient to show proper mailing); *Cataldo*, 60 T.C. at 524 (determining that an incomplete Form 3877 and testimony from the IRS agent that prepared the form was sufficient to show the date of mailing); *Byk v. Commissioner*, T.C. Memo. 1983-516 (holding that testimony of IRS agents regarding the date of mailing was sufficient evidence to determine the date of mailing).

---

Form 3877 upon verifying that the form is properly completed. However, USPS internal policy requires USPS employees to sign the form and enter the total number of items received. USPS Handbook DM-901, *Registered Mail* § 3-4.2.1 (Jan. 2016); *see also Knudsen v. Commissioner*, T.C. Memo. 2015-69, at *15 n.1. We need not determine whether the omission of the total number of items received and the signature of the USPS precludes application of the presumption of proper mailing because the Form 3877 does not contain the USPS stamp.

Thus, the burden of production now shifts to petitioner to show that respondent failed to mail the notice on August 24, 2021. *See Coleman*, 94 T.C. at 92–93. Petitioner provided no such evidence. Therefore, the preponderance of the evidence supports a finding that respondent mailed the notice of employment tax determination to petitioner on August 24, 2021. Thus, the deadline to file a petition with this Court was November 22, 2021.

Petitioner's petition was mailed to the Court on November 18, 2021, using the FedEx Express Saver delivery service. Because FedEx Express Saver is not a "designated private delivery service," petitioner cannot avail itself of the "timely mailed, timely filed" rule in section 7502. Its petition was not filed until November 23, 2021, one day after the expiration of the 90-day period. It was therefore untimely, leading respondent to file his motion to dismiss for lack of jurisdiction. Petitioner objects to the motion, arguing that even though the petition was untimely, we do not lack jurisdiction because the 90-day deadline is a claim-processing rule, subject to equitable tolling.

III. *The Supreme Court's "Clear Statement" Standard*

A jurisdictional requirement marks the bounds of the "court's adjudicatory authority." *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). That is, where a federal court's subject-matter jurisdiction depends on a filing deadline, "a litigant's failure to comply with the bar deprives a court of all authority to hear a case." *United States v. Wong*, 575 U.S. 402, 408–09 (2015). In those cases, the court must enforce the deadline sua sponte and the deadline cannot be waived or tolled. *See id.* at 409.

In contrast, claim-processing rules direct the "'parties [to] take certain procedural steps at certain specified times' without conditioning a court's authority to hear the case on compliance with those steps." *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1497 (2022) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). These claim-processing rules do not deprive a court of the ability to hear a case. *See Wong*, 575 U.S. at 410. Because of the vast consequences of a determination as to whether a procedural requirement is jurisdictional and perceived "drive-by jurisdictional rulings," the Supreme Court has endeavored to "bring some discipline" to the classification of requirements as jurisdictional. *Henderson*, 562 U.S. at 435 (urging courts to limit use of the label "jurisdictional" to requirements governing a court's adjudicatory authority); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (defining "drive-by jurisdictional rulings" as "unrefined

dispositions" in which the court does not expressly consider whether a dismissal should be for lack of jurisdiction or failure to state a claim).

To that end, a procedural requirement is treated as jurisdictional only if Congress "clearly states" that the deadline is jurisdictional. *Arbaugh*, 546 U.S. at 515. "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Wong*, 575 U.S. at 410. The "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.*

To determine whether Congress has clearly stated that a requirement is jurisdictional, we examine the text, context, and relevant historical treatment of the requirement. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). Jurisdictional requirements speak of the court's power "in jurisdictional terms or refer in any way to the jurisdiction" of the court. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94 (1982). These requirements "define a federal court's jurisdiction . . . , address its authority to hear untimely suits, [and] cabin its usual equitable powers." *Wong*, 575 U.S. at 411. With these principles in mind, we now examine the 90-day deadline Congress provided in section 7436(b)(2).

A.      *The Text of Section 7436(b)(2)*

First and foremost, the Supreme Court considers the text of the statute. *See, e.g.*, *Wilkins v. United States*, 143 S. Ct. 870, 877 (2023); *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1497–99; *Musacchio*, 577 U.S. 237, 246 (2016); *Reed Elsevier, Inc.*, 559 U.S. at 166. To create a jurisdictional requirement, Congress "need not use magic words." *Henderson*, 562 U.S. at 436. A statutory deadline may be jurisdictional even without the word "jurisdiction." *See, e.g.*, *Bowles v. Russell*, 551 U.S. 205, 208–13 (2007). Instead, the focus of the analysis is whether the statute expressly refers to the Court's authority to hear a case rather than merely the consequences to the petitioner. *See Harrow v. Dep't of Def.*, 144 S. Ct. 1178, 1183–84 (2024) (determining that the phrase "shall be filed" is not directed at a court's jurisdiction); *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500 (noting that the deadline is directed at the taxpayer, not the court); *Wong*, 575 U.S. at 411; *Dolan v. United States*, 560 U.S. 605, 610 (2010) (noting that jurisdictional requirements impose a limitation on the court's authority to hear a case, to consider the pleadings, or to act upon motions); *Reed Elsevier, Inc.*,

559 U.S. at 161 (explaining the distinction between jurisdictional conditions and claim-processing rules); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (stating that truly jurisdictional statutes speak to the "power of the court" whereas claim-processing rules speak "to the rights or obligations of the parties" (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100 (Thomas, J., concurring in part))). Even mandatory or emphatic text directed at the consequences to the plaintiff is insufficient alone to make a deadline jurisdictional. *See Musacchio*, 577 U.S. at 246; *Wong*, 575 U.S. at 411.

Section 7436(b)(2) provides the 90-day deadline for filing a petition for redetermination of employment status. Although not required, section 7436(b)(2) does not use the word "jurisdiction." More importantly, the limitation does not speak in jurisdictional terms. The statute refers only to a consequence to a taxpayer for failure to comply with the 90-day deadline, that "no proceeding may be *initiated*." (Emphasis added.) "Initiated" indicates the commencement of the proceeding in this Court. *See Initiate*, *Dictionary of Modern Legal Usage* (2d ed. 1995) (defining "initiate" as to "begin, open, or introduce"); *Initiate*, *The American Heritage Dictionary of the English Language* (3d ed. 1994) (defining "initiate" as "to set going by taking the first step"). A case before this Court is initiated upon the filing of a petition by the taxpayer. *United Cancer Council, Inc. v. Commissioner*, 100 T.C. 162, 165 (1993) ("[The taxpayer] also filed its petition initiating a proceeding for review of the notice of deficiency . . . ."); *Porter v. Commissioner*, T.C. Memo. 1998-261, slip op. at 8 ("[The taxpayer] initiated this case by filing an imperfect petition."), *aff'd*, 210 F.3d 384 (9th Cir. 2000) (unpublished table decision); *see also* Rule 20(a).

Section 7436(b)(2), using the word "initiated," focuses upon the consequences to the taxpayer, namely the inability to begin a case. Nothing in the text restricts the Court's ability to "hear [the] case, to consider pleadings, or to act upon motions." *See Dolan*, 560 U.S. at 610. In fact, section 7436(b)(2) does not reference this Court at all. The absence of such text directed to the Court's power to hear the case cuts against finding that Congress clearly intended the 90-day deadline to be jurisdictional. *See Harrow*, 144 S. Ct. at 1183–84; *Wong*, 575 U.S. at 411.

The use of prescriptive text—"no proceeding may be initiated"—likewise does not make the deadline jurisdictional. The Supreme Court has rejected the notion that mandatory or emphatic text is sufficient to signal that a deadline is jurisdictional. *See Wong*, 575 U.S. at 411

(rejecting that argument when the statute provided that an action "shall be forever barred" if it is not filed within six years). The text of section 7436(b)(2) does not clearly indicate that the 90-day deadline is jurisdictional.

### B.    *Statutory Context*

The broader statutory context supports the conclusion that Congress did not clearly state that the 90-day deadline in section 7436(b)(2) is jurisdictional. We consider the relationship of section 7436(b)(2) with the scheme Congress enacted regarding our redetermination of employment status in section 7436.[4] *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499.

#### 1.    *Clear Tie Between the Jurisdictional Grant and 90-Day Deadline*

Congress's separation of a filing deadline from a jurisdictional grant typically indicates that a deadline is not jurisdictional. *See Wong*, 575 U.S. at 411–12; *Reed Elsevier, Inc.*, 559 U.S. at 164–65; *Zipes*, 455 U.S. at 393–94. However, mere proximity between the jurisdictional grant and the requirement at issue, even within the same sentence, does not indicate that the requirement is jurisdictional. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499 ("A requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions.'" (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 155 (2013))); *see also Texas v. United States*, 891 F.3d 553, 560 (5th Cir. 2018) (reasoning that Congress's placement of a deadline and a jurisdictional grant in separate subsections of a statute indicates that the deadline is not jurisdictional). Rather than proximity, there must be a "clear tie between the deadline and the jurisdictional grant" to render the deadline jurisdictional. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499.

---

[4] We may also consider whether the deadline is in a portion of the enacting legislation or the U.S. Code setting forth jurisdictional or administrative statutes. *See Henderson*, 562 U.S. at 438–39 (reasoning that a deadline in the "procedure" section of the enacting legislation indicated that the deadline was not jurisdictional). This analysis is not illustrative of Congress's intent regarding the 90-day deadline because both the jurisdictional grant and the 90-day deadline are in section 7436.

First, we must locate our jurisdictional grant to redetermine employment status. Section 7442 broadly defines the Court's jurisdiction:

> Sec. 7442. Jurisdiction.
> The Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title, by chapters 1, 2, 3, and 4 of the Internal Revenue Code of 1939, by title II and title III of the Revenue Act of 1926 (44 Stat. 10-87), or by laws enacted subsequent to February 26, 1926.

As we recently discussed in *Hallmark Research Collective v. Commissioner*, 159 T.C. 126, 135–36 (2022), section 7442 does not itself confer jurisdiction on this Court. Rather section 7442 states "the truism that the Tax Court 'shall have such jurisdiction' as is 'conferred' by other provisions elsewhere in the Code and other revenue laws." *Id.* at 136 (quoting § 7442). Thus, we must look elsewhere for the jurisdictional grant to redetermine employment status. *See id.*

The particular Code provision that confers jurisdiction to redetermine employment status is section 7436(a). In subsection (a) Congress specifically granted the Tax Court jurisdiction to "determine whether such a determination by the Secretary is correct and the proper amount of employment tax under such determination."

In contrast, the 90-day deadline is in a different subsection—subsection (b)(2). The jurisdictional grant in subsection (a) does not expressly condition jurisdiction on compliance with the 90-day deadline. In fact, there is no express cross-reference between the jurisdictional grant and the filing deadline. This separation of the deadline from the jurisdictional grant without a clear tie indicates that the deadline is not jurisdictional. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499; *Wong*, 575 U.S. at 411–12; *Texas*, 891 F.3d at 561.

Under one possible construction of the statute, the term "appropriate pleading" in the jurisdictional grant in subsection (a) could be read as an implicit reference to the 90-day deadline. In published guidance the Commissioner appears to take this interpretation. *See* Rev. Proc. 2022-13, § 3.05(2), 2022-6 I.R.B. 477, 479. However, the statute does not define "appropriate pleading." Any implicit tie between the filing deadline and the jurisdictional grant that could be derived

from "appropriate pleading" falls short of the Supreme Court's clear tie standard.

Other tax sections enacted around the same time as section 7436 more clearly linked their jurisdictional grant to a filing deadline. *See* § 6404(h)(1) (providing that the Tax Court has "jurisdiction over any action . . . to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, . . . if such action is brought" within 180 days); § 6015(e)(1)(A) ("[T]he individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed" during the 90-day period); *see also Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499 (comparing the lack of a clear tie between the deadline and the jurisdictional grant of section 6330(d)(1) to section 6404(g)(1) and section 6015(e)(1)(A)); *Frutiger v. Commissioner*, No. 31153-21, 162 T.C., slip op. at 6–10 (Mar. 11, 2024) (finding a clear tie between the jurisdictional grant and the filing deadline in section 6015(e)(1)(A)). These other provisions highlight the lack of a clear tie between the jurisdictional grant and the 90-day deadline in section 7436.

## 2.    *Limited Applicability of Section 7436(b)(2)*

In addition to the separation of the jurisdictional grant from the deadline, the limited applicability of section 7436(b)(2) further supports a nonjurisdictional reading. In *Reed Elsevier, Inc.*, 559 U.S. at 165, the Supreme Court interpreted exceptions to the copyright registration requirement to bring a civil copyright infringement action as indicative that the requirement was not jurisdictional. Generally, to bring a civil copyright infringement action, the plaintiff must preregister or register the copyright with the U.S. Copyright Office. *Id.* Under the statutory scheme, the registration requirement is not applicable when (1) the work is not a U.S. work, (2) the infringement claim concerns the right of attribution and integrity, (3) the holder attempted to register the work and was denied, or (4) regarding certain works, the holder declares an intent to register and does so timely. *Id.* The Court stated that "[i]t would be at least unusual to ascribe jurisdictional significance to a condition subject to these sorts of exceptions." *Id.*; *see also Zipes*, 455 U.S. at 393–94 (reasoning that the fact that Congress "approved" relief under Title VII for some claimants who failed to comply with a filing requirement indicated Congress's intent for the requirement not to be jurisdictional).

Section 7436(b)(2) similarly creates exceptions that would be "unusual" for a jurisdictional requirement. We have previously held that a taxpayer may file a petition with this Court without receiving a notice of employment tax determination from the Commissioner. *See SECC Corp.*, 142 T.C. at 231–36. A taxpayer need only show that the Commissioner "made a determination" regarding employment status. *Am. Airlines, Inc. v. Commissioner*, 144 T.C. 24, 33–36 (2015) (holding that the Commissioner made a determination by issuing a Technical Advice Memorandum, a 30-day letter, and an Appeals Case Memorandum, which showed a failure to agree and set forth an amount of liability); *SECC Corp.*, 142 T.C. at 231–36 (holding that the Commissioner made a determination by issuing a 30-day letter, an Appeals Case Memorandum, and a letter regarding assessment which showed the parties' failure to agree and set forth the amount of employment tax liability determined).

While our jurisdiction allows consideration of a determination by the Commissioner regardless of the issuance of a notice of employment tax determination, the 90-day deadline is applicable to only a subset of cases. The 90-day deadline in section 7436(b)(2) applies only when the Commissioner (1) sends a notice of employment tax determination to the taxpayer and (2) sends the notice via certified or registered mail. *See Am. Airlines*, 144 T.C. at 36 n.10. In cases where the Commissioner either fails to send a notice or fails to send the notice through certified or registered mail, the 90-day deadline is inapplicable.

The basis of our jurisdiction "is the determination, not the piece of paper." *Id.* at 34 n.8. In contrast, the 90-day deadline applies only to cases in which the determination is memorialized in "the piece of paper." It is the Commissioner's choice of communication that requires or exempts a taxpayer from the 90-day deadline. It strikes us as "at least unusual to ascribe jurisdictional significance to a condition subject to" this sort of exception. *See Reed Elsevier, Inc.*, 559 U.S. at 165.

C. *Historical Treatment*

A long line of Supreme Court cases holding that a deadline is jurisdictional, left undisturbed by Congress, indicates that a deadline is jurisdictional.[5] *Henderson*, 562 U.S. at 436. Congress may also indicate

_____

[5] It bears emphasis that in considering "relevant historical treatment," *see Musacchio*, 577 U.S. at 246, the Supreme Court looks at whether it (not a lower court) has held that a particular provision is jurisdictional, *see Boechler, P.C. v.*

its intent for a deadline to be jurisdictional by modeling a new statute on a separate statute that has been interpreted by a long line of Supreme Court cases as jurisdictional. *See Musacchio*, 577 U.S. at 247; *Word v. U.S. Commodity Futures Trading Comm'n*, 924 F.3d 1363, 1367–68 (11th Cir. 2019). The Supreme Court has advised courts not to accord precedential effect to "drive-by jurisdictional rulings," in which the court fails to expressly consider whether a dismissal should be for lack of jurisdiction or failure to state a claim. *Arbaugh*, 546 U.S. at 511.

In *Hallmark Research Collective*, 159 T.C. at 153–63, and *Sanders v. Commissioner*, No. 15143-22, 161 T.C., slip op. at 7 (Nov. 2, 2023), we considered the "prior-construction canon" in examining the historical treatment of a statute.[6] The prior-construction canon provides that: If a statute is reenacted using words or phrases that have been uniformly construed by inferior courts, then the later version of that statute preserving the wording is presumed to carry forward that interpretation. *See, e.g.*, *Tex. Dep't of Hous. and Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536–37 (2015) (holding that Congress's subsequent amendment of a statute while retaining text that "ratified the unanimous holdings of the Courts of Appeals" signaled Congress's acceptance of that interpretation).

The Supreme Court has not previously considered whether the 90-day deadline in section 7436(b)(2) is jurisdictional. Further, the prior-construction canon does not demonstrate Congress's intent to make the 90-day deadline jurisdictional. Unlike section 6213, at issue

---

*Commissioner*, 142 S. Ct. at 1500 (referring to a "long line of [Supreme] Cour[t] decisions left undisturbed by Congress" as a clear indication that a requirement is jurisdictional (alterations in original) (quoting *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019))); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 25 n.9 (2017) (stating that the Supreme Court considers "context, including this Court's interpretations of similar provisions in many years past" (quoting *Auburn Reg'l Med. Ctr.*, 568 U.S. at 153–54); *Reed Elsevier, Inc.*, 559 U.S. at 168 (same); *Auburn Reg'l Med. Ctr.*, 568 U.S. at 153–54 (same); *Gonzalez v. Thaler*, 565 U.S. 134, 142 n.3 (2012) (same); *Henderson*, 562 U.S. at 436 (same); *Wong*, 575 U.S. at 416 (referring to "this Court's prior rulings"); *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 82 (2009) (referring to "a long line of this Court's decisions left undisturbed by Congress"); *Bowles*, 551 U.S. at 209 ("This Court has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982) (per curiam))).

[6] We apply the prior-construction canon because the traditional tools of statutory interpretation, including canons of construction, are applicable. *See Wong*, 575 U.S. at 410; *see also Hallmark Rsch. Collective*, 159 T.C. at 153–54.

in *Hallmark Research Collective*, section 7436 has not been extensively construed. We have directly addressed whether its 90-day deadline is jurisdictional only in a footnote in one published opinion, *SECC Corp.*, 142 T.C. at 238 n.11 ("[I]f the IRS sends the taxpayer a letter by certified or registered mail including clear notice that the IRS has made a determination of worker classification, it triggers the jurisdictional period for filing a petition in our Court.").

In *SECC Corp.*, whether the failure to comply with the 90-day deadline should result in dismissal for lack of jurisdiction was not at issue. Rather, the case involved a taxpayer petitioning this Court without a notice of employment tax determination, and therefore the 90-day deadline did not apply. *See id.* at 229. In a footnote, we briefly mentioned that the 90-day deadline was jurisdictional without considering whether the deadline was a claim-processing rule. *See id.* at 238 n.11. This Court did not have the benefit of the recent line of Supreme Court cases involving jurisdictional analysis. Accordingly, we will not treat *SECC Corp.* as precedential for purposes of determining whether the 90-day deadline is jurisdictional. *See Arbaugh*, 546 U.S. at 511.

The same may be said regarding the one circuit court opinion considering whether the 90-day deadline is jurisdictional. The U.S. Court of Appeals for the Eighth Circuit affirmed our dismissal of a petition for redetermination of employment status that was filed two years late in an unpublished opinion. *Apex Oil Co. v. Commissioner*, 500 F. App'x 552, 553 (8th Cir. 2013). The Eighth Circuit did not engage in any analysis to determine whether the 90-day deadline was jurisdictional or a claim-processing rule. *Id.* *Apex Oil Co.*, like *SECC Corp.*, was decided before the above-referenced Supreme Court cases. We will not give it weight in this analysis. *See Arbaugh*, 546 U.S. at 511.

Even if these cases are given precedential effect, the prior-construction canon is still inapplicable. Section 7436 was last amended in 2000, which was before the opinions discussed *supra* were issued. Consolidated Appropriations Act, 2001, Pub. L. No. 106-554, § 1(a)(7), 114 Stat. 2763, 2763 (2000) (expanding the Tax Court's jurisdiction to include the authority to redetermine the amount of employment tax due). Therefore, the second portion of the prior-construction canon— a subsequent amendment to the statute that retains the text courts have held to be jurisdictional—is not present. Thus, unlike with section 6213, it cannot be argued with section 7436(b)(2) that Congress has reenforced our interpretation that the 90-day deadline is jurisdictional.

Similarly worded statutes likewise do not provide a basis for jurisdictional treatment of the 90-day deadline. The structure and text of section 7436 are nearly identical to sections 7428 and 7476–7479, which create our jurisdiction over certain declaratory judgments. There are no Supreme Court cases related to these statutes and the jurisdictional nature of their deadlines. As with section 7436, our cases interpreting these statutes provide cursory analysis regarding whether the deadlines in these declaratory judgment statutes are jurisdictional. *See CRSO v. Commissioner*, 128 T.C. 153, 157 (2007) (stating without analysis that the 90-day deadline to file a petition seeking a declaratory judgment related to the status and classification of an organization under section 501(c)(3) is jurisdictional); *Calvert Anesthesia Assocs.-Pricha Phattiyakul, M.D. P.A. v. Commissioner*, 110 T.C. 285, 288–89 (1998) (defining the 90-day deadline to petition the Court for a declaratory judgment related to the qualification of certain retirement plans as one of the "five jurisdictional limitations" without analysis); *Finnell v. Commissioner*, T.C. Memo. 1998-159, slip op. at 3–4 (relying on *Calvert Anesthesia Assocs.*, 110 T.C. at 288, to find that the 90-day period for filing a petition seeking a declaratory judgment related to the qualification of certain retirement plans was jurisdictional). Lacking the requisite jurisdictional analysis, these rulings cannot act as the basis for the prior-construction canon. *See Arbaugh*, 546 U.S. at 511.

Section 7436 as well as similarly-worded statutes lack a long line of Supreme Court cases interpreting their deadlines as jurisdictional. Further, the prior-construction canon is inapplicable because section 7436 was amended before this Court's interpretation of the 90-day deadline as jurisdictional. Therefore, the relevant historical treatment of section 7436 does not demonstrate that Congress clearly intended the 90-day deadline to be jurisdictional.

*Conclusion*

Considering the relevant text, statutory context, and history, Congress did not clearly state that the 90-day deadline in section 7436(b)(2) is a jurisdictional requirement. Therefore, we are not deprived of jurisdiction because of petitioner's late filing, and we will deny respondent's Motion to Dismiss for Lack of Jurisdiction, as supplemented. We reserve judgment on whether the 90-day deadline is subject to equitable tolling until the parties raise such issue in an appropriate motion.

To reflect the foregoing,

*An appropriate order will be issued.*